# McCarthy *v.* Catholic Knights.

## (*Jackson.* April 22, 1899.)

1. CHANCERY PRACTICE. *Amendment of answer.*

   The Court's refusal to permit amendment of answer at the hearing constitutes no abuse of discretion where it would necessitate a continuance, and the matter of the amendment had long been within defendant's knowledge, and no reason is assigned why it had not been presented earlier. (*Post, pp. 349, 350.*)

2. LIFE INSURANCE. *Applicant's statement as to age.*

   The statement as to the applicant's true age, made in an application for membership in a fraternal insurance order, which declares that the statement and representations made therein shall be the basis of the contract, is a part of the contract of insurance, although the same is not incorporated or referred to in the policy or certificate issued to the applicant. (*Post, pp. 350, 351.*)

3. SAME. *Same.*

   A misstatement as to the applicant's age in an application for membership in a fraternal insurance order, which is made a part of the contract of insurance, will not defeat a recovery under the policy, notwithstanding that, contrary to the statement, she had passed the age limit prescribed by the constitution of the order, where she did not know her exact age, the application was made out on one of the association's blanks, and presumably by some of its officers or members, the date and place of her birth were not filled in the blanks, and the facts as to her character and age were, under the provisions of the constitution, referred to a committee, upon whose report the certificate was issued upon which dues were paid for nearly seven years. (*Post, pp. 350–357.*)

McCarthy *v.* Catholic Knights.

Cases cited and approved: Insurance Co. *v.* Booker, 9 Heis., 628; Boyd *v.* Insurance Co., 90 Tenn., 212; Insurance Co. *v.* Morris, 3 Lea, 101.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. LEE THORNTON, Ch.

PIERSON & EWING for McCarthy.

PERCY & WATKINS and EDGINGTON & EDGINGTON for Knights and Ladies.

McFARLAND, Sp. J. This was a bill filed by Mary McCarthy, individually and as administratrix of Ellen Rogers, against Catholic Knights and Ladies of America and Bridget Conner to recover of said association, a fraternal insurance order, the sum of $2,000 upon a benefit certificate issued by the order in 1891 upon the life of Ellen Rogers, payable upon death of assured to her two nieces, the complainant, Mary McCarthy, and defendant, Bridget Conner. The latter had at first refused to join in the bill, and was made defendant, but subsequently joined in the prosecution of the claim and suit.

The application for membership was made by Ellen Rogers on June 21, 1891, and appears to have been signed by her "Ellen Rogers." This ap-

plication was made upon one of the association's printed blanks and premises by saying: "Having read the constitution and laws of your order, the subordinate constitution and your by-laws, and being fully acquainted with the objects of your order, and fully indorsing them, I desire to become a member. . . . And, furthermore, do pledge myself (under pain of forfeiture of all rights of membership and benefits) that the following statements are true." Then follows a number of questions and answers, in which she gives her age as 49 next birthday, but the answers as to place and date of birth are left blank. She further agrees "that the statements and representations made in the foregoing application and declaration shall be the basis of the contract between me and said Supreme Council Catholic Knights and Ladies of America, the truthfulness of which statement and representations I do hereby warrant," etc.

Upon this application there is the following:

"*Note.*—In case of doubt as to the age of the applicant, the investigating committee must reject or require proof as provided in Sub. Con."

There follows a report of the investigating committee which was appointed, in which they say "they have attended to that duty and find her qualified to become a member."

Another indorsement of instructions appears upon this application, as follows: "If committee are not satisfied as to applicant in regard to character or

age, or any other reason, they should reject the candidate at once.''

The constitution of subordinate branches provided that ''no person shall be admitted to this branch unless sound in bodily health, free from all infirmities or disease, between the ages of 18 and 50 years.'' It further provides for the investigating cnmmittee, and says: ''The committee shall present report, which shall be final.''

There was also a medical examination, made by the association's medical examiner, Dr. Willett, who makes his report, and, in this report, he puts her age as 49. Appended to this report, and a part of same, appears another declaration of assured as to truth of the statements in her application itself. This declaration is signed ''Ellen Rogers. Her **X** mark.''

Upon this application and these several reports a certificate of membership is issued to the assured, simply reciting that the assured is a member in good standing and in case of death of member $2,-000 is to be paid her neices, Bridget Conner and Mary McCarthy. There are no stipulations in the certificate as to any representations or warranties. Under this certificate she was duly initiated on the sixtéenth day of August, 1891, and paid her proper dues, and these were regularly paid up to January 30, 1898, amounting to over $100. The assured died in 1898.

On hearing there was a decree for defendant. The

only defense made by the answer necessary to be noticed is that at the date of her application, June 21, 1891, the assured was more than 49 years of age, was, in fact, more than 50 years old, and that her statement in her application for membership as to her age was a warranty of its truth, was material, and was untrue, and, for this reason, this policy was void.

When the cause came on for hearing the defendant asked leave to amend its answer so as to show that Mary McCarthy and Bridget Conner were the nieces of Mrs. Rogers, who was dependent on them, and who paid the premiums on the policy. They had no insurable interest in her life. The policy is a contract of wager, and cannot be recovered on. The Chancellor refused to allow this amendment, to which exceptions were reserved and these proceedings incorporated into the record by a bill of exceptions.

There is no assignment of error upon the part of the defendant to this error complained of, and we cannot consider same now in aid of other defenses raised in the answer to the contention of complainant. If we were to concede, however, that this question is now open, •its determination would not help defense. The application to make the amendment came after all the proof had been taken and the cause regularly called for hearing. The facts, if true, must have been known to defendant long before the application. There was no cause shown

why the application was not made sooner. To have granted this would have probably necessitated a continuance for further proof on behalf of complainant. It was a matter of discretion in the Chancellor, and no such abuse of this discretion appears as would cause this Court to pronounce it error. The only question for determination, then, is that raised as to the age of the assured at the date of her application.

It is contended on behalf of defendant that her statement as to age was a warranty, was material, and was untrue. The contention of complainant is that it was not incorporated in the policy or certificate, but appeared only in the application, and was, therefore, only a representation, and not a warranty. They also contended that the whole contract, including the constitution and by-laws of the association, which were incorporated in the contract, must be taken together, and by this constitution a previous examination as to age was had, a committee appointed, who reported upon this question of age, upon which this association acted and determined. That it was known this woman did not herself know her exact age, and for this reason the examination was made, and, by the very language of the constitution itself, clause 74, this report "shall be final." The complainant contends further that the defendant has not shown that the age as given was not true.

We are of the opinion that the representation made

McCarthy v. Catholic Knights.

by the assured as to her true age was a part of the contract of insurance, and that it was a material part. Says Bacon: "Where it is provided that if any of the statements made by the applicant as the basis of the contract, shall be found in any respect untrue, then the policy shall be void. A misrepresentation as to the age will void the policy. The question of age is so material that a false statement in regard to it will be fatal, whether regarded as a representation or a warranty. Where an applicant for admission to a voluntary association for mutual relief, the rules of which did not admit members over 60 years of age, stated his age in his application to be 59 years, when, in fact, he was 64 years old, it was held by the Supreme Court of Maine that the misrepresentation voided the contract for insurance issued thereon." Benefit Soc. & Ins. (Bacon), 225; *Swett* v. *Citizens' Mut. Rel. Soc.*, 78 Me., 541.

In this Maine case the Court says: "The age of the applicant was a material fact. If more than 60 he could not become a member. This representation of a fact was a warranty of its truth, and if not true the contract was invalid. This rule is so uniformly held by the Courts that no authorities need be cited." *McCoy* v. *Rom. Cath. Ins. Co.*, 132 Mass., 272; *Kobok* v. *Phœnix Mut. Co.*, 4 N. Y. S., 718; *Ætna Ins. Co.* v. *French*, 91 U. S., 510; *Southern Life Ins. Co.* v. *Booker*, 9 Heis., 628; *Boyd* v. *Ins. Co.*, 6 Pickle, 212.

It may be said, however, that this rule, though well established, is not applicable to every case of misrepresentation as to age. This rule, like every other rule in principle, is subject to modification, or is not applied when made under special circumstances of ignorance, misrepresentation or mistake, where this want of knowledge is known to the insurer. Thus, in *Miller* v. *Phœnix Mutual Life Ins. Co.*, 107 N. Y., 292, where the agent of an insurance company filled in the application and the applicant was an old man, who spoke English imperfectly, and told the agent he did not know his age, and the agent inserted an age which turned out to be erroneous. So where (as in *Brant* v. *Guaranty Mut. Ins. Co.*, 7 N. Y. App., 847) the agent made a miscalculation, and where the applicant was an ignorant man and the agent computed his age and inserted it wrong (as in *Keystone Mut. Ben. Asso.* v. *James*, 72 Md., 363), in these and like cases the company was estopped from claiming advantage of the misstatement.

So in a great number of other cases, under varying circumstances, where it was shown that the error of statement was inserted by the agent of the company upon facts as honestly given by the insured, the policy was not invalidated. See note to *Colemans* v. *Supreme Assembly*, 16 L. R. A., 33, for a great number of authorities on this point.

The case presented here is very similar, though not so strong in favor of the assured, in some of

its features, as the Miller case, *supra.* Here the applicant was an Irish woman that had come from Ireland in her youth, ignorant and uneducated, who could neither read nor write. There are several facts in the record demonstrating she did not know her exact age, and her nearest kin so testifies. Her application was made out on one of the association's blanks, and, presumably, by some of the officers or members of the association. The date and place of her birth was not filled in the blanks. The facts as to her character and age were, under the provisions of the constitution of the association, referred to a committee composed of members, and *pro hac vice* officers, of the association, and, upon an investigation of these facts and their report on the fact as to her age, the certificate was issued to her, and upon this certificate the dues were paid for a period of nearly seven years to her death. These facts should, it would seem, bring the case within those numerous cases which hold the association estopped from questioning the age of the assured after her death. Independent of this question, the inquiry still remains whether the defendant has established the fact that the insured was over 49 years of age when she made her application. Was this statement in fact false?

It is an elementary principle that forfeitures are not favored in the law, and, in order to work a forfeiture of the rights of membership in a mutual association, it must clearly appear that such was the

18 P—23

meaning of the contract, and the facts upon which a forfeiture is claimed must be proved by the most satisfactory evidence. 3 Am. & Eng. Enc. L. (2d Ed.), 1086; *Bates* v. *Detroit Mut. Ben. So.*, 51 Mich., 587; *Jackson* v. *The N. W. M. R. Asso.*, 78 Wis., 468; Benefit So. & Life Ins. (Bacon), 198; *Southern Life Ins. Co.* v. *Booker*, 9 Heis., 606; *Ins. Co.* v. *Morris*, 3 Lea, 101.

In this last case the question was whether the answers of the assured were false or fraudulent. The Circuit Judge had charged the jury that the burden of proof was on the defendant, and that the plaintiff was entitled to recover unless the proof positive shows that Blount Morris, "the assured, made false or fraudulent answers to the questions," and this charge was sustained.

There were three classes of evidence adduced in this case by the defendant to show that the assured was, in fact, over 49 years of age when the application was made.

1. The testimony of several witnesses who had known the assured for a number of years.

2. Two copies of marriage licenses issued by the County Court of Shelby County, Tenn., one of date February 4, 1854, between Stephen Leonard and Ellen Walsh, and the other date January 12, 1859, between Martin Rogers and Ellen Walsh, and two certificates purporting to be taken from the registry of marriages of St. Peter's Parish, testified to by Father Sheehan, and dated February 6, 1854, be-

tween Stephen Leonard and Helenam Walsh, and the other dated January 12, 1858, between Martin Rogers and Eleen Walsh.

3. A deposition made by the assured in the Probate Court of Shelby, on May 29, 1897, in which the assured was proving a claim against an estate, and in which she gave her age as 60 years.

As to the first class of testimony, that of witnesses as to her age, this was of witnesses testifying in 1879 as to the apparent age of assured when they first knew her forty to fifty years before. None of these witnesses, except one Eleen Curry, had more than a general acquaintance with assured, and had but an indefinite remembrance when she married Martin Rogers, and they could only say she was grown at that time. None of them knew her age or place of birth. The testimony of all these witnesses is too indefinite and confessedly uncertain as to date and facts to prove anything.

Another witness, Ellen Curry, an old and ignorant Irish woman, testified that she came over from Ireland in 1853 or 1854, she couldn't remember which, with assured, and says assured was older than witness; that she was bigger, and a little older, but nowhere states how old she herself was; says assured first married a man by name of Leonard, and afterwards a man by name of Rogers, but don't know first name of either. This witness does not attempt to give the age of assured at any time. The evidence of all other witnesses is only circumstan-

tial, and too indefinite to be worth anything. As to the marriage licenses and certificates, there is no evidence certainly establishing that the Ellen Walsh mentioned in the license of 1854 was the same as the assured. In the certificate from the parish registry Hellen Walsh is given as the woman who married Stephen Leonard in 1854.

One of plaintiff's witnesses, Bridget Conner, testifies she always heard the first husband was named Peter Leonard, while the witness for defense says Stephen Leonard had a cousin named Peter Leonard. Another witness for defendant says she heard assured say her first husband was Stephen Leonard. Upon this evidence it is argued that if Ellen Walsh married in 1854 she must have been over 49 in 1891, as she could only have been 12 years old in 1854, if only 49 in 1891. Upon the other hand, Ellen Curry, who came from Ireland with assured in 1854, says she was only a girl then.

To say the most of this testimony, taken as a whole, it is not of that clear and positive character as to her age as is required under the authorities cited to prove the falsity of her statement in the application, and demand a forfeiture of the rights under the policy. Upon the other hand there is in the record the testimony of all the living relatives of assured that she was not, in their opinion, more than 49 years old in 1891, with the investigation and report of the committee composed of her neigh-

bors and acquaintances, made at the time upon this question of age.

The evidence under the third class of evidence in the cause—the oath of the assured made in May, 1897, as to her age, and that she was 60 years of age at that time—is equally inconclusive, giving it all the force of a sworn statement made by a party in interest.

This statement by her in her deposition, naming her age as 60, was one of those preliminary and formal questions and answers entirely immaterial to the matters in controversy in the Probate Court. The proof in the record, as has already been shown, abundantly establishes the fact that she did not in fact know her age. And as evidence of her ignorance and inaccuracy of statement as to dates and prominent occurrences of her own life, in the very next clause of the same answer she states that she had been living in Memphis fifty years, while according to defendant's evidence in the cause she came to Memphis in 1854, and had thus been living in Memphis, when that deposition was given in 1897, only forty-three years, a difference of seven years. This is clearly not such a solemn statement or admission as would estop her from denying its truth.

This disposes of all the material contentions of defendant and in favor of the complainants, and the decree of the Chancellor will be reversed and decree entered here in favor of the complainants for amount claimed and costs.