BAKER *et ux. v.* TENNESSEE GAS TRANSMISSION CO.

(*Nashville*, December Term, 1951.)

Opinion filed July 11, 1952.

WIGGS & HUMPHREYS, of Linden, and HILLDROP & MAY-FIELD, of Nashville, for appellants.

THOMAS HARRIS, of Linden, DOUGLAS T. BATES, of Centerville, JAKE A. O'BRIEN, of Springfield, and GEORGE H. ARMISTEAD, JR., of Nashville, for appellee.

370

Mr. Justice Tomlinson delivered the opinion of the Court.

In February, 1950 Mr. and Mrs. Baker executed a deed which recited a conveyance to the Tennessee Gas Transmission Company, its successors and assigns, for a valuable consideration stated and paid of the right (1) to construct, maintain, etc. a pipe line through their farm and to carry gas through said pipe line, and (2) to construct, etc. "at any time or from time to time one or more additional lines of pipe", and to pay the grantors for each such additional line $1.50 per lineal rod, such payment to be made sixty days after the completion of construction of such additional line. All privileges necessary to the accomplishment and enjoyment of the rights granted were likewise provided.

The first line mentioned under this contract was constructed. Thereafter, the gas company undertook to enter for the purpose of determining location, course, distance, etc. over the Baker property for the construction of a second line, and to construct this second line. The intentions of the gas company were to locate this second pipe line at a different place from the first, and according to a course not parallel. Mr. and Mrs. Baker refused entry. As a result the gas company filed this bill seeking to enjoin Mr. and Mrs. Baker from interfering with its entry, survey, and construction.

The answer of Mr. and Mrs. Baker averred that previous to the execution of the deed of February, 1950 two additional deeds granting the gas company the right to construct a gas pipe line over said property had been executed by the Bakers and two pipe lines in addition to the one already constructed under the February, 1950 agreement had been constructed. The answer does not say whether they are parallel. The two previous agreements were made exhibits to the answer. Each granted the gas company the right to construct an additional line of pipe. Each provided that such additional lines should be "parallel with" the line already constructed. The February 9, 1950 deed did not provide that any new line should be parallel to the old line.

The answer further avers that notwithstanding the right of the gas company under the two previous deeds to enter and construct a parallel line without any further agreement upon the part of the Bakers, nevertheless, on each of the occasions the representatives of the gas company returned and procured a new agrement. The Bakers say that by reason of this course of conduct they did not consider the agreement of February 9, 1950 as having the legal effect of permitting the gas company to re-enter and construct another gas line unless and until a new agreement had been made and evidenced by the deed of the Bakers.

It is insisted by the answer that the February 9, 1950 deed, properly construed, does not give the gas company the right to construct another pipe line in the absence of a new contract between the gas company and the Bakers. It does not aver any act of fraud with reference to procuring the 1950 deed, but it does aver that if the representatives of the gas company thought the 1950 agree-

ment conferred the right to re-enter and construct another line without a new contract, then the representatives of the gas company were guilty of fraud, trickery and deceit. This, of course, is only the statement of a conclusion.

This answer was filed as a cross-bill, wherein there is sought a declaratory decree relative to the existence or nonexistence of a right in the gas company to construct this additional line in the absence of a new agreement. It prays that the decree declare the Bakers to be under no obligation to permit the construction of this second line under the February 1950 agreement.

The gas company demurred to the cross-bill on the ground that its allegations, other than those which are conclusions of the pleader, are allegations which seek to vary by oral testimony the terms of the deed which the Bakers admit having executed for a valuable consideration paid. The Chancellor sustained the demurrer and dismissed the cross-bill.

Then the case came on for hearing on the motion of the gas company that it be "specially set for hearing on bill and answer."

Thereupon, the Bakers moved for leave to amend their answer so as to aver (1) that neither of them read the February 1950 deed because, at the time each started to read it, each was separately advised by the agent of the gas company that such reading was unnecessary because, so the agent allegedly represented, the deed was identical "in every way" with the two previous ones which they had read and signed. This proposed amendment was not verified by the oath of either party. It did not suggest any reason why this alleged fraud had not been averred

in the answer signed and filed by the Bakers four months before this amendment was proposed.

The Chancellor refused to permit the proposed amendment to the answer and, after a hearing on bill and the answer, entered a decree adjudging the gas company to have the right under the February, 1950 agreement to construct the second pipe line, it being the opinion of the Chancellor that the language of the deed giving that right was unambiguous, and incapable of any construction other than that of conveying to the gas company the right to construct this second pipe line; and that in this situation the deed could not be varied by parol evidence.

The Bakers have appealed and raise the determinative questions hereafter discussed and decided.

The bill alleged in detail as to the great financial loss the gas company would suffer by any material delay in the construction of its proposed second gas pipe line through the farm of the Bakers. Notwithstanding that elaborately detailed allegation of the bill before them, the answer of the Bakers made no mention of the alleged fraud averred in their proposed amendment to the answer. At the time of the preparation, signing and filing of this answer the Bakers necessarily knew whether they had been induced to execute this deed without reading it by reason of any false and fraudulent representations of the gas company. Nevertheless, and notwithstanding the alleged materiality of time in getting the matter determined, they elected to withhold this averment of fraud until four months thereafter it became apparent that they were about to be cast in the suit upon the theory on which they had elected to rest their case. Faced with that situation they proposed to amend by adding the averment with reference to fraud. They offered no excuse as to why they did not aver it in the first instance.

■ Courts are indulgent in allowing amendments to answers in matters of form, but, "for obvious reasons slow to allow material alterations in sworn answers" or answers signed by the parties. *Cook* v. *Bee*, 2 Tenn. Ch., 343, 345, 346, with supporting citations of authority.

The case at bar is quite similar to the situation in *McCarthy* v. *Catholic Knights and Ladies*, 102 Tenn. 345, 350, 52 S. W. 142, 143, wherein an amendment to the answer was belatedly sought. The Court said:

"The application to make the amendment came after all the proof had been taken and the cause regularly called for hearing. The facts, if true, must have been known to defendant long before the application. There was no cause shown why the application was not made sooner. To have granted this, would have probably necessitated a continuance for further proof on behalf of complainant. It was a matter of discretion in the chancellor, and no such abuse of this discretion appears as would cause this court to pronounce it error."

■ ■ The above quoted statement of the Court is dictum. However, it is sound on principle, and we find . no case holding to the contrary of the principle stated. In accordance with that principle, the necessary conclusion is that the Chancellor did not abuse his discretion in refusing to allow the amendment. An appellate court will not disturb the action of the Chancellor in such a matter in the absence of a showing that there was such an abuse.

The clause in the deed over which the controversy arises provides that "there is also hereby granted the right to lay, construct—at any time or from time to time one or more additional lines of pipe", for which the

grantors are to be paid an additional $1.50 per rod after construction is completed. It is the contention of the Bakers that this language does not mean that the gas company may construct an additional line in the absence of a new agreement giving permission and fixing therein the consideration to be paid. They state in their brief here that "all they want is that it(the deed) be applied to the parties to this cause as it is written and not have the fictitious, unfair and uncontemplated" construction that has been placed upon it by the gas company and by the Trial Court. The assignments of error are consistent with this statement. Therefore, on this phase of the case, the question is only one of construction of the heretofore quoted language.

This instrument grants the gas company an easement for the building and maintaining of a gas pipe line over grantors' farm, and "also * * * the right to lay, construct * * * at any time or from time to time one or more additional lines of pipe". That language is capable, in the opinion of this Court, of but one construction. That construction is that it grants to the gas company an easement under which the servitude may subsequently be expanded. Compare the Pennsylvania case of *Caruthers* v. *People's Natural Gas Company,* 155 Pa. Super. 332, 38 A. (2d) 713, and annotated in 162 A. L. R. 587-588. Therefore, the gas company was authorized by the deed of the Bakers to construct this second line.

It is said, however, by the Bakers that they did not so construe the deed granting this easement. The language by which the right to expand the servitude created by the easement is simple language, and, as heretofore held, capable of no meaning other than that heretofore stated. As the case comes here, no element of

fraud is involved. Upon further reflection, counsel will readily see that a party to a deed executed without fraudulent representations cannot be allowed to avoid clear and unambiguous provisions of that deed on his subsequently declared representation of a misunderstanding as to the meaning of that unambiguous provision.

While appellants assign other errors, that which is said above is conclusive of this appeal. Further discussion is therefore unnecessary.

Let the decree be affirmed with costs adjudged against the appellants and their sureties.