270 P.2d 825

QUINN et ux.　v.　STONE et al.

No. 8024.

Supreme Court of Idaho.

May 12, 1954.

Rehearing Denied June 4, 1954.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for appellants.

Robert M. Kerr, Jr., Blackfoot, for respondents.

GIVENS, Justice.

Respondents own fractional Lots 4 and 5 in the northern part of the South half of Section 31, Township 4 North, Range 41 East Boise Meridian. Appellants own the land adjoining on the north in the same Section.

April 23, 1945 Sophie Thomsen, a widow and respondents' predecessor-owner, by written agreement duly acknowledged and recorded, for a valuable consideration granted appellants an easement over her lands in perpetuity and as covenants appurtenant to and running with the title, to install diversion works, pumping plant, transformer station and pumping house at a designated point in Lot 4 on a slough; the right to extend, build, maintain and operate an irrigating ditch from the pumping plant extending in a northerly direction; the right to extend another irrigating ditch from the said pumping plant in a northwesterly direction; the ditches of such width, size and capacity, including banks and borrow pits, to carry approximately 200 miner's inches of water for the irrigation of appellants' land in both Sections 30 and 31 (north and west of respondents' land); an electric power line extending from the westerly line of the grantor's land to the point of the pumping plant hereinbefore referred to; with right of free ingress and egress at all times for the purpose of maintaining and operating and repairing said power line, ditches and pumping plant.

At the time of this agreement a ditch existed or was immediately constructed from the pump site directly north towards

appellants' land. While some attempt was made to use this ditch, it proved unsatisfactory as water therefrom could not be conveyed easterly on appellants' land because the slope of the land was to the west and this ditch thus never was used, but immediately discarded and the same year, 1945, a ditch northeast from the pumping plant was constructed, which is the only ditch ever actually used by appellants.

The exact date when respondents purchased their land from Mrs. Thomsen is not shown, but evidently after 1945. Mr. Spaulding, Mrs. Thomsen's son-in-law, testified he farmed a small portion of the northern part of respondents' land in 1941, the balance being rough sage brush land with cottonwoods and willows thereon and that none of respondents' land was farmed thereafter until 1950 and since the latter date it has been farmed only by Mr. James Mason, respondents Stone's renter, thus, at the time respondents Stone acquired the land and when they began to extend the leveling and cultivation thereof, appellants had in use and actual operation only the one ditch. Apparently in 1950 or 1951, Mason, in part, separately from appellants, pumped water, but carried it jointly in appellants' northeasterly ditch. The water thus augmented caused this ditch to develop sink holes, which interfered with appellants' ability to get water to flow north and west on their land. They then entered upon respondents' land and commenced to construct a ditch northwesterly from the pump, when they were summarily stopped and ousted by Mason, respondents' renter.

This suit ensued, to quiet title to a right-of-way for a ditch northwesterly from the pumping plant and to enjoin respondents from interfering with the construction and operation of such ditch.

The answer admitted the easement agreement; refusal to permit the construction of the northwesterly ditch; asserted the description of the right-of-way therefor is so indefinite and uncertain that it is incapable of location and, therefore, of no force or effect; that by the construction of the ditch which originally went north from the pumping plant, plowed under in 1945, and the construction of the northeasterly ditch, appellants have exhausted all their rights under the easement agreement, and that the construction of the northwesterly ditch as attempted by appellants would cross respondents' cultivated lands at a sharp angle, making it difficult to farm the same; and plead the bar of the statute of limitations.

The court found the easement agreement was made, and progressive findings and conclusions in the alternative; construction, but unsatisfactory use of and immediate abandonment of the first ditch straight north, which was plowed under the same year; concluding the construction of this ditch, together with the construction of the northeast ditch exhausted appellants' easement rights, thereby now confined to this one northeast ditch; and if such rights are

246

not so exhausted, appellants, because they did not construct the northwesterly ditch until after a lapse of almost seven years, were guilty of laches and lost any further right to any such second ditch; and if they have not so exhausted or lost their rights by laches, the description in the agreement was too indefinite to grant an easement for said northwesterly ditch.

The description found to be defective as to the northwesterly ditch is as follows:

"The right to extend another irrigating ditch from the said point of the pumping plant, in a northwesterly direction, to the aforesaid East and West Half Section line of said Section 31, Township and Range aforesaid."

The pump, the initial or starting point, was and has been definitely located since 1945.

▆▆▆ The general, appropriate rule is, thus stated:

"Where a conveyance of a right of way *does not* definitely fix its location, the grantee is entitled to a convenient, reasonable, and accessible way within the limits of the grant." 28 C.J.S., Easements, § 80a, page 760.

"In describing an easement, all that is required is a description which identifies the land which is the subject of the easement, and expresses the intention of the parties. Here the defendant's land is the subject of the easement and it has been described with particularity. In Lidgerding v. Zigne-

go, supra [77 Minn. 421, 80 N.W. 360], this court held a description sufficient which indicated a right of way 'upon or near' the line of defendant's property. In Callan v. Hause, 91 Minn. 270, 97 N.W. 973, 1 Ann.Cas. 680, and note, the rules governing the location of easements where the description is indefinite are stated. In such a case the grantor has the right in the first instance to designate and locate the roadway, and, if reasonably suitable for the purpose, a selection of a place cannot be questioned. If the grantor omits to exercise this right, the grantee may make the selection and his selection will be upheld unless he has abused the right. (Cases.) In Grafton v. Moir, 130 N.Y. 465, at page 471, 29 N.E. 974, 976, 27 Am.St.Rep. 533, Judge Vann, speaking for the court, said: 'When the right of way is not bounded in the grant, the law bounds it by the line of reasonable enjoyment.' This means that the easement must be a convenient and suitable way and must not unreasonably interfere with the rights of the owner of the servient estate. See Kretz v. Fireproof Storage Co., 127 Minn. 304, 312, 149 N.W. 648, 955. * * *" Ingelson v. Olson, 199 Minn. 422, 272 N.W. 270, 274, 110 A.L.R. 167, at pages 170–171;

17 Am.Jur. 987, § 86.

The above thought is further expressed, elucidated and recognized in Parker v.

Swett, 40 Cal.App. 68, 180 P. 351, 352, and Id., 188 Cal. 474, 205 P. 1065.

"It is true that the route of the pipe line is not definitely described in the deed, but it has been held that in such a case a reasonable route is intended, and title may be quieted to such reasonable route. (Cases.)

"It is proper and customary under such circumstances, in view of the general equitable jurisdiction to do full and complete justice in one action, for the court to designate for the parties just what would be a reasonable route under all the circumstances in evidence. (Cases.)" Parker v. Swett, supra, 180 P. at page 352.

E. M. Christensen, a civil engineer who had made other surveys on these lands, testified as to the ability to locate and construct a ditch from the description in the easement:

"Q. * * * Now, Mr. Christensen, with those descriptions in mind, could you, as an engineer, go out there on the ground, and from what appears there, establish those ditches, or that ditch? A. Well, that northwesterly direction, ordinarily when they—when the description is made that way you usually count it north forty-five degrees west, or somewheres close to there.

"Q. And with regard to the size of the ditch, does that have any definite meaning to you, in your experience— A. Yes.

"Q. —as an engineer? A. The first thing I would have to do is run a profile line, to find out what fall the ditch would have; and then from that profile, or those notes, then I could figure what size ditch capacity it would take in order to carry two hundred inches of water.

"Q. And could you do that on the ground? A. Yes."

His cross examination did not negative the above:

"Q. Mr. Christensen, you feel that you could take that description and establish a suitable—Do you feel, Mr. Christensen, that you could take that instrument, the easement, and establish a suitable ditch, a reasonably suitable ditch for that purpose, on the ground? A. Well, having been on that farm, and knowing the location, and that, I would follow somewheres near the north forty-five degrees west as I could; but I would also, unless there was some objection from the land owner, try to make as economical a ditch as possible, and not try to hit ridges, or, at least, make as direct a route but avoid holes and swales, and things like that.

"Q. Yeah. A. In other words, make it a practical ditch, instead of a theoretical ditch.

"Q. Well, that's what I am asking you, if you could establish a reasonably practical and suitable ditch, from what appears in that instrument? A. I would say so, yes."

R. T. Michener, likewise an engineer, thus testified with regard to the matter:

"A. Well, northwesterly would mean north forty-five degrees west, or in that neighborhood. To me the term, used as it is here, would allow you some latitude in your location of the ditch.

"Q. And, in regard to the other phrase of a ditch of a size sufficient to carry two hundred inches of water, does that have a definite meaning to you? A. In this case it has a very definite meaning, because the upper end of the ditch is flexible; that is, by that I mean that your—you got a pump lift on the upper end of the ditch, and you could vary that water level up or down with your pump.

"Q. And, could you, from that description, then, determine the approximate, or general size and nature of the right of way involved across which the ditch would have to run? A. No, I couldn't determine the size of it. The size, however, would be fixed by the terrain or contour of the land that you cross. The cross section of the ditch would be easily determined, but the width of the embankment couldn't be

determined here in the court room, but it would be fixed by your terrain on the ground; it would be just one way.

"Q. That is, the point I was getting at, Mr. Michener, stating it another way, once the contour of the ground was determined, would you then be able to determine the size of the right of way involved? A. Yes sir.

"Q. And, from an engineering standpoint, would that be true regardless of who put the ditch in, that is, as between engineers. A. Well, between engineers, yes, that would be true.

"Q. In other words, do engineers have any standard to go by? A. Yes, the standard that would apply there would be your slope of the earth that would be considered a good slope. Now, I would hazard a guess that ninety percent, or nearly all of the engineers that went on a job such as that would figure those earth slopes at one-and-a-half to one; that is, one-and-a-half horizontal to one vertical. It's a very common slope. However, a lot of people that aren't engineers if they would build that, why, they would build it as steep as possible, which would make a difference. But, to answer your question, between engineers, why, I imagine that nearly all of them would stake it out on a one-and-a-half to one slope.

"Q. And having done so, would that then determine the size of the en-

tire right of way? A. Exclusive of the barrow pits, yes."

■ It is to be remembered that we are not considering a description in a deed, a decree, or a judgment, but a description in an easement clearly authorizing the future construction of a northwesterly ditch. Under the above authorities the description herein was thus sufficient and since the ditch has not been constructed, the court, in exercise of its equitable powers, in completely settling this controversy, may determine where the ditch should be. Parker v. Swett, 40 Cal.App. 68, 180 P. 351, supra.

In this connection, respondents' objection to the location projected by appellants was that it would cut respondents' land in a triangular shape and greatly interfere with the proper farming thereof, which contention the record sustains.

Mr. James Mason, the only witness testifying for respondents as to this feature of the case, said that to construct a ditch more or less directly west and then north would be just as proper and feasible as northwesterly and would not materially interfere with respondents' lands; that there are now one or two ditches used by respondents in about that location; and he thus continued:

"Q. You say it would be cheaper the way you propose than the other way? A. . Well, it—

"Q. After you get through leveling your ground? A. Yeah, at the—

"Q. Is that what you want me (the court) to believe? A. At the present time, the way he is trying to build it there he is going to have to fill that ditch in a few places. When it gets. leveled off, why—we are going to have a carry-all in there this spring, and we are going to level all that ground, and the piece where the ditch—the ditch that I said would be better for. me to run north to his fence line will be right at the top end of my west field, and water west. That way the land will be leveled, and we can bring the ditch straight west and straight north, and we won't need no fill, or anything else, because that will all be one piece of land.

"The Court: That's all.

"Q. Well, do you propose to also level the ground where the ditch is now located, that is, where he proposed to locate it, or started to build it? A. Northwesterly, you mean?

"Q. Yes. A. Yes, we intend to level all that field.

"Q. And, that would be the same thing, then, after it's leveled, if the ditch was put across there, why, it would be substantially the same then? A. It would be substantially the same; it would be easier to build either one."

\* \* \* \* \* \*

"Q. In building is anything more required than just. ditching that out,

after it's leveled, on either course? A. No, I don't think so. I think a person could go in there and make himself a ditch of sufficient size in either direction, after it gets leveled. It might be that in a place or two if his lands are higher than the lands on this property, if his land should happen to be higher on the other side when they get through leveling, supposing it should happen to be that my place is a foot lower than his, why, then, of course, the ditch— the ditch that he uses will have to be banked, or when he starts to push it on his property it will probably run over on my property. But if the land is in general level across there, the same as his, which I think it is by the lay of it, why, I don't see why there should be any trouble."

The feasibility and reasonableness of this proposed route west and north were not denied by appellants and, therefore, according due consideration to the rights of both parties, appellants' northwesterly ditch will be so constructed. A. S. D. Securities v. J. H. Bellows Co., 48 Ohio App. 101, 192 N.E. 472; Stevens v. MacRae, 97 Vt. 76, 122 A. 892.

Respondents Stone were not present at the trial and did not testify. Mrs. Thomsen's son-in-law, Spaulding, who participated in making the agreement, testified it was his understanding that after the two ditches, i. e., the northerly one and the northeasterly one, had been built, that was the end of the matter, implying they constituted the two ditches agreed upon.

No objection or question about building a northwesterly ditch was made until 1952, when the right to so construct was attempted to be exercised, and mere non-use of an easement by grant does not show abandonment nor does mere non-use or deferment or non-exercise of an easement by grant result in the statute of limitations barring the easement. Edgerton v. McMullan, 55 Kan. 90, 39 P. 1021; Hoffman v. Dorris, 83 Or. 625, 163 P. 972; Parker v. Swett, 40 Cal.App. 68, 180 P. 351; Id., 188 Cal. 474, 205 P. 1065, supra; City of Vallejo v. Scally, 192 Cal. 175, 219 P. 63, at page 64; Strosnider v. Pomin, 52 Cal. App.2d 745, 126 P.2d 915, at page 918; Furtado v. Taylor, 86 Cal.App.2d 346, 194 P.2d 770, at page 773; 28 C.J.S., Easements, § 60, page 724; 17 Am.Jur. 1026, § 141.

An instrument granting an easement is to be construed in connection with the intention of the parties and circumstances in existence at the time the easement was given and carried out. 28 C.J.S., Easements, § 26, page 680.

Holding the construction of the northerly ditch, abandoned in 1945 and never used thereafter, exhausted appellants' right to two ditches, i. e., one in addition to the northeasterly ditch, is too strict an interpretation of the grant and is contrary to the contemporary and subsequent events and

attitudes of the parties. It is obvious when the northeasterly ditch was constructed, it was in lieu of and to take the place of the one described in the second paragraph of the agreement and not as the additional or second ditch, Tripp v. Bagley, 74 Utah 57, 276 P. 912, at page 919, 69 A.L.R. 1417, and the northeasterly ditch has been in use since 1945 without objection on the part of appellants or their predecessor.

The northwesterly ditch was entirely distinct and never has been constructed, but failure to sooner construct it does not bar appellants' rights to now construct it. City of Vallejo v. Scally, 192 Cal. 175, 219 P. 63, at page 64, supra; Parker v. Swett, 40 Cal.App. 68, 180 P. 351, supra; Edgerton v. McMullan, 55 Kan. 90, 39 P. 1021, supra; Seymour Water Co. v. Lebline, 195 Ind. 481, 144 N.E. 30, at page 33, 145 N.E. 764; Hatton v. Kansas City, C. & S. Ry. Co., 253 Mo. 660, 162 S.W. 227, at page 232.

The judgment, therefore, is reversed and the cause remanded with instructions to determine, and definitely describe, the course and distance of the present northeasterly ditch, and the second ditch west and then north to be constructed; the right of way for ingress and egress, and the power line; Perry v. Reynolds, 63 Idaho 457, at page 466, 122 P.2d 508; Leverone v. Weakley, 155 Cal. 395, 101 P. 304, at page 306; Northwest Cities Gas Co. v. Western Fuel Co., Inc., 17 Wash.2d 482, 135 P.2d 867; De Reus v. Peck, 114 Colo. 107, 162 P.2d 404; so this controversy will be ended, not only as to the present parties, but for the future. Kosanke v. Kopp, 74 Idaho 302, 261 P.2d 815, at page 818.

Costs awarded to appellants.

PORTER, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.