Minnie SORRELL and Husband, Allie Sorrell, Appellants,

v.

TENNESSEE GAS TRANSMISSION COMPANY, Appellee.

Court of Appeals of Kentucky.

March 21, 1958.

Rehearing Denied June 20, 1958.

Thomas R. Burns, Morehead, for appellants.

Louis Cox, Hazelrigg & Cox, R. Vincent Goodlett, Frankfort, for appellee.

STEWART, Judge.

This is an appeal from a judgment declaring valid an agreement giving "the right, privilege and authority" to defendant-appellee, Tennessee Gas Transmission Company, to construct an additional pipe line under, upon, over and through the lands of plaintiffs-appellants, Minnie Sorrell and Allie Sorrell.

This controversy stems from the construction to be placed upon the language of the agreement entered into between the parties to this litigation, the relevant portions of which read:

"Know All Men By These Presents: That the undersigned, Minnie Sorrell and Allie Sorrell, (hereinafter called Grantor, whether one or more), for

and in consideration of the sum of Four Hundred Eighteen and 75/100 ($418.75) Dollars, in hand paid, receipt of which is hereby acknowledged, does hereby grant, bargain, sell and convey unto Tennessee Gas Transmission Company, a Delaware corporation, its successors and assigns (hereinafter called Grantee), the right, privilege and authority for the purpose of laying, constructing, maintaining, operating, altering, repairing, removing, changing the size of and replacing pipe lines (with fittings, tie-overs and appliances, including Cathodic Protection equipment) for the transportation of oil, gas, petroleum products or any other liquids, gases or substances which can be transported through pipe lines, and of erecting, maintaining and removing a line of poles and appurtenances thereto for the operation thereon of telephone, telegraph and electric transmission lines, the Grantee to have the right to select, change or alter the routes under, upon, over and through lands which the undersigned owns or in which the undersigned has an interest situated in the County of Rowan, Commonwealth of Kentucky, described as follows:"

Following a description of the property, the agreement continues:

"By the terms of the agreement Grantee *has* the right to lay, construct, maintain, operate, alter, repair, remove, change the size of and replace at any time or from time to time one or more additional lines of pipe, *said additional lines not necessarily parallel to any existing line* laid under the terms of this agreement and for each such additional line laid Grantee shall pay Grantor or his agent hereinafter designated his pro rata share of Two and 85/100 ($2.85) Dollars per lineal rod of pipe line within sixty (60) days *subsequent* to the completion of the construction of such additional line." (Italics supplied.)

Pursuant to the terms of this instrument appellee constructed and is now operating and maintaining a pipe line across the lands described in the agreement. Thereafter, on August 27, 1957, it notified appellants by letter it proposed to lay an additional line across their property and transmitted therewith a check for $111.45, this being the sum computed to be due them on the basis of $2.85 per lineal rod for 39.1 rods.

Subsequently appellants filed their complaint against appellee seeking a declaration of the rights of the parties under the agreement. They averred the recital therein providing for the construction of additional pipe lines is invalid and unenforceable because it is vague, uncertain and indefinite in its meaning and because it violates the rule against perpetuities. They also asked that appellee be permanently enjoined from building the proposed line or any additional lines under the agreement.

The lower court, after a hearing, pronounced the agreement clear, definite and unambiguous in its language, ruled appellee acquired a present vested expansible easement to construct additional lines, and that they need not be parallel across appellants' land, and denied the request for injunctive relief. On this appeal the two contentions advanced below are renewed.

As to the first ground relied upon for reversal, appellants reason that the provision granting additional line rights is merely a simple option to exercise a future right of purchase, which is unlimited as to time and indefinite in duration. They point out that there is nothing in the context of the agreement to indicate when, if ever, additional lines will be built. This fact, they assert, makes the agreement uncertain as to when it will be performed. They also maintain the agreement is vague as to where additional lines are to be laid. They advance these questions: Will future lines be placed at separate ends of the farm? Or will they be installed under permanent improvements and structures? They sum up their argument along the

line mentioned by emphasizing that the absence of the elements of *when* and *where* the additional lines are to be constructed under the agreement makes it void.

Although the type of agreement before us has never been passed upon in this jurisdiction, instruments practically similar in content have been upheld by other courts. The case of Caruthers v. Peoples Natural Gas Co., 155 Pa.Super. 332, 38 A.2d 713, 714, 162 A.L.R. 587, involved a right of way contract which granted unto the gas company the authority to construct a pipe line across property later acquired by one Carroll Caruthers and, among other things, provided that the gas company might "at any time lay an additional line of pipe alongside of the first line". One of Caruthers' predecessors in title permitted the first line to be built in 1906 pursuant to the contract. In 1940, the gas company, without Caruthers' knowledge or consent, commenced work preparatory to installing a second line. An injunction proceeding was instituted to halt the gas company's activity. The same contention was made there, as is now posed here, that the instrument did not bestow upon the gas company a vested easement but merely an option to purchase one at an indefinite future time. The Pennsylvania court had no difficulty in finding that the instrument in unambiguous terms conveyed a *presently vested easement,* as distinguished from an option to acquire future additional servitudes.

In dealing with this identical question, the Restatement of Law of Property, Chapter 27, Section 393, Comment j, page 2321, has this to say: "Frequently the owner of land, in granting an easement or profit, requires that the grantee make payments of money at future dates, the time and amount of such payments being determined by the number of trees cut from time to time, or by the extent of the land utilized in the development of the easement or profit. To the extent that such agreement is found to constitute the creation of present rights in the servient land with payment

for some of these rights postponed, no 'option' is sought to be created * * *."

The right or privilege granted under the terms of the instant agreement is much broader than the easement construed in the Caruthers case, cited above. That case dealt with an easement that required each additional line to be laid "alongside" any other lines previously laid, whereas the agreement in the case at bar allows additional lines to be laid across any portion of the land. An agreement identical with the one under consideration is set forth in Baker v. Tennessee Gas Transmission Co., 194 Tenn. 368, 250 S.W.2d 566, 569, and that case in upholding the right of the gas company to construct additional lines under the agreement characterized the authority to do so as "the right to expand the servitude created by the easement." See also Crawford v. Tennessee Gas Transmission Co., Tex.Civ.App., 250 S.W. 2d 237; Tennessee Gas Transmission Company v. Bayles, D.C.La., 74 F.Supp. 258; Lone Star Gas Co. v. Childress, Tex.Civ. App., 187 S.W.2d 936; Babler v. Shell Pipe Line Corporation, D.C.Mo., 34 F.Supp. 10.

■ There are, of course, elements of indefiniteness in every instrument which simply grants certain rights of use with respect to a tract of land and does not specify that those rights are to be exercised over any particular portion of the property. Then, too, the quantity of land which may be used by the grantee for constructing and maintaining its line or for ingress and egress is not customarily specified in the type of easement under consideration and these matters may likewise be said to be left uncertain. The great weight of authority is, however, that such grants are nevertheless valid. See 17A Am.Jur., Easements, Sec. 101, p. 711; 28 C.J.S. Easements § 80, p. 760. This statement appears in Ingelson v. Olson, 199 Minn. 422, 272 N.W. 270, 272, 274, 110 A.L.R. 167, which is applicable to the issue raised: "In describing an easement, all that is required is a description which identifies the land

# 196

which is the subject of the easement, and expresses the intention of the parties."

 In the light of the authorities discussed, it seems clear that a multiple line grant, whether the location of the subsequent lines is tied to that of the first or not, cannot be held void for want of definiteness.

It is next maintained the agreement in controversy violates the rule against perpetuities. This rule is in these words, as set forth in Gray's The Rule against Perpetuities, Section 301 (4th Ed.): "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." It is apparent from a casual reading of this language that the rule is not involved with the possession and enjoyment of an interest but with its vesting. As has been shown, the instrument with which we are concerned grants present rights and subjects the land described therein to an immediate servitude. It is true that the owner of the easement is not limited as to the time in which it may make full use of its rights. This, however, does not mean that its rights have not vested. Many types of easements which are granted in perpetuity are not exercised immediately, or within any limited time; yet it has never been suggested that the non-use of the rights granted, either in whole or in part, affects their validity. See Restatement of the Law of Property, Chapter 27, Section 399, Comment g, page 2341. Nor does the circumstance that a payment is to be made when the easement is used prevent it from being a present right. See Gray, supra, Section 279.

The same volume, chapter and section of Restatement on page 2341 observes that the expansible aspect of an easement such as the one under scrutiny " * * * can be thought of as the progressive utilization, in its entirety, of an interest fully created at the beginning, or as to the creation of an original less inclusive interest to which new rights are added from time to time.

The former of these two approaches facilitates the excepting of all such arrangements from the application of the rule against perpetuities * * *."

It is our opinion the lower court correctly decided the issues raised in this appeal.

Wherefore, the judgment is affirmed.