Silverean J. BRAZEAL and Daisy V.
Brazeal, Appellants,

v.

William G. BOKELMAN, Appellee.

No. 16234.

United States Court of Appeals
Eighth Circuit.

Oct. 23, 1959.

**944**

Before WOODROUGH and MAT-THES, Circuit Judges, and MICKEL-SON, District Judge.

MATTHES, Circuit Judge.

In this diversity action for specific performance, the principal question is whether William G. Bokelman, plaintiff below, occupied certain real estate in Kansas City, Missouri, under a valid and existing written lease containing an option to purchase, which had been executed by Mr. and Mrs. Brazeal, defendants in the trial court. We shall refer to the parties as they appeared in the trial court.

Defendants seek a reversal of the trial court's judgment directing defendants to convey the real estate to plaintiff on four basic grounds, (1) the lease was invalidated because of a material alteration; (2) the lease had been terminated in February, 1947, and plaintiff's occupancy of the premises was as a tenant from month to month; (3) the option to purchase was unenforceable because of failure of consideration; (4) the evidence was inadequate to justify the court's finding that plaintiff was ready, willing and able to pay $18,000, the option price.

A summary of the evidence will disclose the basis of the foregoing contentions:

On August 30, 1946, defendants, as the owners of a lot in Kansas City, Missouri, situated at the northwest corner of Main and 50th Streets, entered into a written instrument whereby said premises were leased to one C. E. Eckard for a term of ten years, commencing September 1, 1946, and ending August 31, 1956, at a monthly rental of $150. By the terms of the lease, the defendants, as lessors, granted to the lessee an option to purchase the premises, at any time during the term of the lease, for the price of $18,000, lessee being required to give lessors at least thirty days' notice in writing of his intention to exercise the option. The lessee was also granted the right to assign the lease at any time during its term.

At this point it should be observed that the property leased to Eckard was improved with service station equipment consisting of a small building for an office, and another building containing a grease rack and gasoline pumps. In fact, the lease provided that the property was to be used by the lessee for the purpose of operating a service station.

Eckard occupied and operated the service station from September 1, 1946, until February 17, 1947. He paid the rent with reasonable promptness for the months of September, through December, 1946, and on January 11, 1947, Eckard sent his check to defendants for $150 to cover the January, 1947, rent. Because of insufficient funds in Eckard's account, this check was not paid. On February 17, 1947, while Eckard was still in possession of the premises, he duly assigned the lease to plaintiff Bokelman and one Pat Manley, and sold them his service station equipment for $3,750. The purchasers immediately took possession of the premises, and on March 1, 1947, they sent a check to defendants for $150 to cover the March, 1947, rent. On November 17, 1947, Manley sold all of his interest in the personal property and his rights under the lease to Bokelman, who continued to occupy the premises and to pay $150 each month as rent until the controversy arose over the right of plain-

tiff to exercise the option and purchase the property. On April 18, 1956, plaintiff notified defendants in writing that, as assignee of the lease, he was exercising his option to purchase, requested defendants to deliver the abstract of title to his attorney, and advised that when the terms of the option had been complied with, plaintiff would deliver to defendants the sum of $18,000. Shortly thereafter defendants notified plaintiff they would not sell him the property under any circumstances. This suit followed.

*The Alteration Issue.*

The lease consisted of three typewritten pages, each party having a copy. Eckard and the Brazeals signed the last page of each copy. Concededly and obviously, there is a marked difference in the first page of the two copies, in that the type used in preparing defendants' copy was larger, and the provision fixing the monthly rent at $150 and the date and place of payment was omitted. No one could explain this discrepancy, but defendants do not rely on this to sustain their contention that the lease was invalidated because of a material alteration. Rather they seize upon another discrepancy which appears in the fourth paragraph of the third page. Defendants' copy introduced as an exhibit, read:

> "The *lessee* hereby covenants and agrees at his own cost and expense to keep and maintain the roofs and exterior parts of all buildings now forming a part of the demised premises, the floors and all plumbing outside of the filling station proper, in good order and repair for the term of this lease * * * and to make all other necessary repairs to the buildings caused by general wear and tear from use and not caused by the direct act or act of the lessee, his agents, employees, sub-tenants or customers."

Plaintiff's copy of the lease was identical except that the word "lessee" in the first line of said fourth paragraph had been changed to "lessor" by inking in the letters "or" over the letters "ee." Defendants urge us to hold that this constituted a material alteration, and that inasmuch as they had not consented to such change, it effectively voids the instrument.

The trial court found there was a discrepancy as above noted, but did not find that the change or alteration which appears in plaintiff's copy was made subsequent to the execution of the lease.

The Missouri Supreme Court has stated that "a presumption exists that alterations and erasures of written instruments, in the absence of evidence to the contrary or suspicious circumstances, were made before or contemporaneously with the execution and delivery of the instrument and it is for the party attacking the instrument to show otherwise." Otten v. Otten, 348 Mo. 674, 156 S.W.2d 587, 588. See also, Globe Automatic Sprinkler Co. v. Laclede Packing Co., Mo.App., St. Louis, 93 S.W.2d 1053, 1056; Home Trust Co. v. Josephson, 339 Mo. 170, 95 S.W.2d 1148, 1151, 105 A.L.R. 1063; Rankin v. Tygard, 8 Cir., 198 F. 795, 804. We have carefully reviewed the testimony concerning this discrepancy, and find no rebuttal of such presumption. It must be remembered that witnesses were testifying as to events occurring twelve years previously; Mr. Eckard stated that he did not remember if the inked-in portion appeared when he signed it; the plaintiff testified that the change was present when he received the assignment from Mr. Eckard and that he did not make the change. Mr. Brazeal testified on cross-examination that he in fact did not read the lease carefully. In addition, we have compared the two copies in the original transcript and note that it contains numerous typographical errors and strike-overs. We further consider the obvious fact that the language used in defendants' copy whereby the *lessee* agrees to make building repairs, etc., except those caused "by the direct act * * * of the *lessee,* his agents, employees, sub-tenants or customers" is self-contradictory and at war with other provisions of the lease. In addition, there is evidence that defendants, or their insurance company, in fact paid for roof

repairs and other building repairs during the term of the lease, thereby giving effect to its terms, according to plaintiff's copy. All of these circumstances lend weight to the permissible conclusion that the change was made at the time the lease was executed, and absent "evidence to the contrary" and the fact that such change was not suspicious in itself, we hold that no material alteration was made which would serve to avoid the lease, and in particular there was no discrepancy material to the option issue involved in this suit.

*The Forfeiture Issue.*

This is the crucial question and springs from the failure of Eckard to pay the January, 1947, rent. When Eckard's check for $150, given on January 11, was returned to defendants because of insufficient funds, Mr. Brazeal, according to his testimony, called upon Eckard, informed him the check had "bounced" and that he wanted possession. Eckard asked for thirty days in which to vacate the premises and that was agreed to by Mr. Brazeal. On February 17, 1947, and within the thirty days requested by Eckard, the latter formally assigned the lease to plaintiff and Manley, who took possession on the same day. As previously stated, a check for $150 was sent to defendants by the new tenants on March 1, 1947. By deposition, Eckard denied that Mr. Brazeal had demanded possession of the premises, and testified that Brazeal had not been on the premises at any time within three months before he vacated the property. Eckard also testified that he called the Brazeal home by telephone and talked to a lady whom he thought was Mrs. Brazeal and informed her that he was selling to Bokelman and Manley and assigning the lease to them. Mrs. Brazeal denied this conversation.

Plaintiff testified that along with the first check for the rent he notified defendants by letter that he had taken over the service station, and that about March 15, 1947, they (the Brazeals) came into the station and informed Bokelman and Manley that "we hadn't bought anything from Mr. Eckard, but they didn't give us no (sic) reason or show us no (sic) reason why we hadn't." On this score Mrs. Brazeal stated that she called on Bokelman the latter part of March, and "told him that he had bought blue sky, if he paid any amount of money for anything, whatever he bought," and that she further informed Bokelman that as long as he paid the rent he could occupy the station.

On the basis of the foregoing, defendants urged the trial court to hold that Eckard's failure to promptly pay the January, 1947, rent constituted a breach of the lease and gave rise to their right to work a forfeiture thereof; and that they had effectively declared and enforced such forfeiture so that all rights of the parties under the lease had been fully terminated when Eckard attempted to assign his interest to plaintiff and Manley.

At the outset it will be seen that there was a definite conflict in the evidence on the dominant and underlying question of whether defendants had in fact declared a forfeiture following Eckard's breach occasioned by nonpayment of one month's rent. After an exhaustive consideration of pertinent facts and circumstances focused upon defendants' conduct throughout the term of the lease, and, in particular, upon their attitude toward plaintiff as manifested by their transactions with him, the trial court found that defendants had waived any right they had to enforce a forfeiture of the lease in February, 1947; that they had consistently recognized the lease to be in effect and that plaintiff occupied the premises thereunder.

■ We approach the problem mindful of the universally recognized principle of law that forfeiture, which is the right of a landlord to terminate a lease because of the lessee's breach of covenant or other wrongful act, is not favored by the courts. 51 C.J.S. Landlord and Tenant § 102; 32 Am.Jur., Landlord and Tenant, § 848; Frank v. Dodd, Mo. App., St. Louis, 130 S.W.2d 210; Carbonetti v. Elms, Mo.App., St. Louis, 261 S.W. 748.

■ The law is equally well settled that a lessor, having a right of forfeiture may waive such right either expressly or by his conduct. 51 C.J.S. Landlord and Tenant § 117; 32 Am.Jur., Landlord and Tenant, § 881; Lucas Hunt Village Co. v. Klein (en Banc), 358 Mo. 1054, 218 S. W.2d 595, 599; and the right to forfeit may be lost by estoppel. 51 C.J.S. Landlord and Tenant § 117; 32 Am.Jur., Landlord and Tenant, §§ 882, 883; Frank v. Dodd, Mo.App., St. Louis, 130 S.W.2d 210; and cf. Carbonetti v. Elms, Mo. App., St. Louis, 261 S.W. 748. See also Annotation, 120 A.L.R. 557; Annotation, 109 A.L.R. 1267, Missouri cases, pp. 1270–1271; Annotation, 115 A.L.R. 376, 382–383; Annotation, 118 A.L.R. 124 (waiver as to lessee's assignee). On the question of waiver, the Supreme Court of Missouri in Lucas Hunt Village Co. v. Klein, supra, ruled that the intention of the party charged with making the waiver is the dominating factor, and if not shown by express declaration, but implied by conduct, there must be a clear, unequivocal and decisive act of the party showing such purpose and so manifestly consistent with and indicative of an intention to waive, that no other reasonable explanation is possible.

Tested by the foregoing principles of waiver, we are convinced that the trial court's finding was not clearly erroneous; indeed, the probative evidence conclusively demonstrates the correctness of the court's ruling. It is significant that although defendants claim Eckard had agreed to vacate the premises sometime around February 18th or 19th, they manifested no interest in their property as reasonably prudent landlords would do, realizing that the property could be damaged by vandals or the elements if left vacant and unattended. No further act was taken which would be indicative of an intent to enforce the forfeiture. The first visit after the alleged notice to Eckard was during the latter part of March, 1947, and after notification of plaintiff's occupancy and receipt and deposit of his rent check.

Further indicative of the fact that the parties operated under the lease is a consideration of improvements made by plaintiff. In 1949, plaintiff desired to construct an addition 30x40 feet in size to the rear of the existing building, as a permanent improvement. Having been advised by a contractor that the cost of this addition would be approximately $3,-350, plaintiff first attempted to borrow that amount from an oil company. Failing in that effort, plaintiff negotiated with defendants and obtained a loan from them. Under his agreement with defendants, plaintiff was required to and did repay the loan with 6% interest thereon, in monthly installments of $100 each. Plaintiff also installed a "lift," heating equipment and new lighting on the premises at a cost of about $1,300. Thus plaintiff made a total outlay of approximately $4,650 for permanent improvements. We are in full accord with the trial court's reasoning that it is inconceivable that a person occupying property as a tenant from month to month and subject to being ousted on thirty days' notice, would embark upon a permanent improvement program at such a substantial cost. This circumstance strongly indicates that both parties recognized the existence of the lease and that plaintiff was occupying thereunder.

Finally, there was testimony that from 1951, if not before, the rental value of the property, because of industrial development in that area, had increased to $250 a month. The importance that the trial judge attached to this circumstance is shown by the following portion of his memorandum opinion:

> "It is of course possible, but it seems to me improbable, that the defendants would have contented themselves with $150.00 a month rent for several years, when they could have demanded a much larger rent, unless they felt themselves bound by the lease."

■ Defendants have failed to sustain the burden of showing that the trial court's findings on the forfeiture issue

were clearly erroneous. There was evidence from which the court could have properly concluded that defendants did not declare a forfeiture in February, 1947; and we find support in probative evidence that defendants had clearly, unequivocally and decisively demonstrated a clear purpose on their part to waive any right they may have had to enforce a forfeiture of the lease.

### Failure of Consideration.

■ Defendants also assert that plaintiff cannot enforce the option clause contained in the lease, because it was given in consideration of rental payments, and that because rent for January and February, 1947, was never paid to the lessors, this constituted a failure of consideration. It is well settled that rental payments under a lease agreement constitute sufficient consideration for the option given by the landlord. See Tebeau v. Ridge, 261 Mo. 547, 170 S.W. 871, 875, L.R.A.1915C, 367; Rockhill Tennis Club of Kansas City v. Volker, 331 Mo. 947, 56 S.W.2d 9, 17; Hathaway v. Nevitt, 358 Mo. 202, 213 S.W.2d 938, 941. From March, 1947, through May, 1956, plaintiff made regular monthly rental payments and defendants admit that all payments were made while plaintiff was in possession under this lease. As to plaintiff, as lessee, there was no failure of consideration. There is no evidence that defendants at any time advised plaintiff that rental payments under the lease were due for January and February, 1947, and no demand was made upon plaintiff for these amounts accruing before he took possession of the premises. At this late hour, defendants cannot seriously contend that omission of two rental payments by plaintiff's predecessor in interest constitute such a failure of consideration as to deprive plaintiff of his rights under the lease.

### Plaintiff's Ability to Pay the Option Price.

On this issue plaintiff testified that he had arranged for a loan from one M. I. Chaplin for $20,000, and that this amount was available to him when he made the offer to purchase the property from defendants. This was confirmed by Mr. Chaplin, who, when testifying, stated he had the sum of $20,000 on his person in the form of a cashier's check. Defendants offered no contradicting evidence, but contend that the showing made does not establish the ability of plaintiff to perform.

■ Generally, a person seeking specific performance must show that he has performed, or offered to perform, or is ready, able and willing to perform, all essential acts required by the instrument upon which he is relying. 81 C.J.S. Specific Performance § 91; Suhre v. Busch, 343 Mo. 170, 120 S.W.2d 47, 59. Defendants rely principally upon Suhre, and the rule announced therein at page 59 of 120 S.W.2d: "A proposed purchaser is not able, when he is depending upon third parties who are in no way bound to furnish the funds to make the purchase." See also, 49 Am.Jur., Specific Performance, § 40, p. 55. The weakness of defendants' position is that the facts herein remove this case from the rule as announced in Suhre. There, as the court pointed out, there was merely conversation regarding a loan. No definite commitment had been made. Here, the undisputed testimony convincingly established that plaintiff had actually obtained the loan, and the proceeds thereof were in court when the case was tried. Under these circumstances there can be no merit to the assertion that plaintiff was not able to perform his part of the contract.

■ This is a typical case of "hindsight" proving more valuable than "foresight." In 1946, when the instant instrument was executed, the defendants were possessed of sufficient business acumen to have accumulated the leased premises and to have operated a business thereon, and it may reasonably be assumed that they then felt that the lease in its entirety represented a sound business transaction from their standpoint. And we dare say that if property values in the area of the disputed premises had not greatly appreciated in value, the defendants' attitude in 1956 would have re-

mained unchanged, they would still have viewed the lease in general and the option provision in particular as the product of good business judgment on their part. Certainly courts will not lend themselves to striking down a contract, otherwise valid, simply because the vicissitudes of time proved it to be a "bad" bargain for one of the parties.

The judgment is

Affirmed.