646 P.2d 422

**NORTHWEST PIPELINE CORPORATION,**
Plaintiff-Respondent,

v.

**FORREST WEAVER FARM, INC., an**
Idaho Corporation,
Defendant-Appellant.

No. 13701.

Supreme Court of Idaho.

June 10, 1982.

Leon R. Weeks (deceased), Nampa, for defendant-appellant.

Gary L. Montgomery, of Marcus & Marcus, Boise, for plaintiff-respondent.

McFADDEN, Justice.

On June 3, 1955, Earl and Darlene Clark executed a contract which granted to Pacific Northwest Pipeline Corporation and its successors and assigns "the right to select the route for and construct, maintain, inspect, operate, protect, repair, replace, alter or remove a pipeline or pipelines for the transportation of oil, gas and the products thereof, on, over and through (grantors property)." The consideration was established at one dollar per lineal rod of pipe installed. The contract was recorded and the company constructed a pipeline approximately 113 rods long. Forrest Weaver Farms, Inc., (hereinafter Weaver) succeeded to the interest of the Clarks and Northwest Pipeline Corporation (hereinafter Northwest) succeeded to the interest of Pacific Northwest Pipeline.

In March 1979, Northwest advised Weaver that it intended to construct an additional pipeline pursuant to the right of way granted by the 1955 contract. Northwest offered to submit payment in the amount of one dollar per lineal rod, a total of $113.00, and in its written notice of intent committed payment for any damages caused by the laying of additional pipeline. Weaver refused the offer of payment and denied that Northwest has the right to lay an additional pipeline.

Northwest filed a declaratory judgment action which was originally assigned to the magistrate division but was transferred to the district court by agreement of the parties. Both parties moved for summary judgment. In its motion, Northwest asked the court to adjudicate that Northwest has the right to construct an additional pipeline across Weaver's land under the terms of the contract. In its motion, Weaver asked the court to adjudicate that the contract is void, invalid, and unenforceable insofar as it purports to grant the right to lay additional pipelines across Weaver's property. Weaver asserted that the contract is unenforceable because it is vague and indefinite in its terms as to the location of the specific route for the pipeline and the time period in which any pipeline would be constructed.

The validity of the contract was also challenged on the ground that it was a mere option to secure a future right of way, without a limitation as to the time within which it must be exercised, and as such, it suspends the power of alienation in violation of I.C. § 55–111. The court entered summary judgment in favor of Northwest. Weaver appeals.

On appeal the two contentions advanced below are renewed with the addition of an unconscionability argument.

In *Quinn v. Stone*, 75 Idaho 243, 270 P.2d 825 (1954), this court set forth the general rule that "[i]n describing an easement, all that is required is a description which identifies the land which is the subject of the easement, and expresses the intent of the parties." This contract contains a specific description of the land which is the subject of the easement and it is clear that the intent of the contracting parties was to allow additional pipelines. The contract language provides, in the granting clause, "Grantors do hereby grant and convey unto . . . grantee, the right to select the route for and construct . . . pipeline or pipelines . . . ." Another paragraph states: "Should more than one pipeline be laid under this grant, at any time, an additional consideration, calculated on the same basis per lineal rod as specified above, shall be paid for each such line laid." Another paragraph states: "Any pipeline constructed by Grantee . . . shall be buried to such a depth as will not interfere with cultivation." The reference to "pipelines," "more than one pipeline," and "[a]ny pipeline" would be unnecessary if the contracting parties intended that only one pipeline would be constructed. The fact that the location of the route for an additional pipeline is not fixed will not render the contract unenforceable. The courts of other jurisdictions which have been confronted with multiple pipeline contracts have upheld them as enforceable. In *Sorrell v. Tennessee Gas Transmission Co.*, 314 S.W.2d 193 (Ct.App. Kentucky 1958), the court stated:

"There are, of course, elements of indefiniteness in every instrument which sim-

ply grants certain rights of use with respect to a tract of land and does not specify that those rights are to be exercised over any particular portion of the property. Then, too, the quantity of land which may be used by the grantee for constructing and maintaining its line for ingress and egress is not customarily specified in the type of easement under consideration and these matters may likewise be said to be left uncertain. The great weight of authority is, however, that such grants are nevertheless valid." 314 S.W.2d at 195.

Although the contract does not specify the exact location of additional pipelines, Northwest's choice of route is limited by the rule "[w]here a conveyance of a right of way does not definitely fix its location, the grantee is entitled to a convenient, reasonable, and accessible way within the limits of the grant." *Quinn v. Stone, supra,* at 246, 247, quoting *Parker v. Swett,* 40 Cal.App. 68, 180 P. 151 (1919).[1] In light of these authorities, the multiple line grant cannot be held void for want of definiteness.

■ Weaver also advances a theory that he is prohibited from constructing buildings on his property because Northwest may choose to construct a pipeline where the buildings are located. In response to this we need only note that Northwest is limited to a reasonable route, and that the contract provides that Northwest will pay any damages which may arise due to the exercise of their rights under the contract.

■ It is next contended that the right of way contract is an option contract which, because there is no time limitation, suspends the power of alienation in violation of I.C. § 55–111. This section reads, "The absolute power of alienation of real property cannot be suspended by any limitation or condition whatever, for a longer period

than during the continuance of the lives of the persons in being at the creation of the limitation or condition, and 25 years thereafter . . . ."

The Court of Civil Appeals in Texas, in *Strauch v. Coastal States Crude Gathering Co.,* 424 S.W.2d 677 (1968), was confronted with this issue under almost identical facts. The court cited numerous cases holding that the courts have uniformly rejected this type of argument. The court then quoted from *Sorrell v. Tennessee Gas Transmission Co.,* 314 S.W.2d 193 (Ky.Ct.App.1958),

"It is apparent from a casual reading of this language that the rule is not involved with the possession and enjoyment of an interest but with its vesting. As had been shown, the instrument with which we are concerned grants present rights and subjects the land described therein to an immediate servitude. It is true that the owner of the easement is not limited as to the time in which it may make full use of its rights. This, however, does not mean that its rights have not vested. Many types of easements which are granted in perpetuity are not exercised immediately, or within any limited time; yet it has never been suggested that the non-use of the rights granted, either in whole or in part, affects their validity." 424 S.W.2d 677, 680.

The court concluded by stating "We hold that the grant of the right at any time to lay and maintain an additional pipeline or pipelines alongside of the first one for the purposes mentioned did not constitute a mere option, but created an expansible easement with vested rights not affected by the rule against perpetuities." The language in this right of way contract is almost identical to the language in those cases. Accordingly, the right of way contract does not suspend the power of alienation in violation of I.C. § 55–111.

---

1. The right to select the route has been exercised once by the construction of the previous pipeline. The original grantor, acquiesced in that route, and therefore under the contract, presumably accepted that route as reasonable. Here, Northwest has indicated that it intends to lay the additional pipeline in close proximity to the already existing pipeline. Under these circumstances, that too would appear to be reasonable. If the route chosen by Northwest is unreasonable, Weaver may resort to the court for determination of the route. See *Quinn v. Stone, supra.*

Weaver also advances an unconscionability argument in that the consideration to be paid for the construction of additional pipelines is fixed at one dollar per lineal rod. While it may seem a small amount of money in light of the current economic trends, there is nothing in the record to indicate that the contract was not the result of free bargaining between the parties.

As the court stated in *Kleinheider v. Phillips Pipeline Co.*, 528 F.2d 837, 842 (8th Cir. 1976):

"The appellants took their land with notice of the easement contracts, and there is no evidence to even suggest that the contracts, entered into between the original parties, are not the result of free bargaining. We find *Brazeal v. Bokelman*, 270 F.2d 943 (8th Cir. 1959), a diversity case arising from Missouri, on point. There, the Court said: 'This is a typical case of "hindsight" proving more valuable than "foresight." In 1946, when the instant instrument was executed, the defendants were possessed of sufficient business acumen to have accumulated the leased premises and to have operated a business thereon, and it may reasonably be assumed that they then felt that the lease in its entirety represented a sound business transaction from their standpoint. And we dare say that if property values in the area of the disputed premises had not greatly appreciated in value, the defendants' attitude in 1956 would have remained unchanged, they would still have viewed the lease in general and the option in particular as the product of good business judgment on their part. Certainly courts will not lend themselves to striking down a contract, otherwise valid, simply because the vicissitudes of time proved it to be a "bad" bargain for one of the parties.'"

The intent of the original contracting parties will control. The contract is not unconscionable.

Judgment affirmed. Costs to respondents.

BAKES, C. J., and DONALDSON, J., concur.

BISTLINE, Justice, dissenting.

Defendants' predecessors-in-interest, Earl and Darlene Clark, 37 years ago owned Lots 1 and 2 in Section 19, Township 5 North, Range 2 West, B. M., County of Canyon, State of Idaho.

On a printed form entitled Right Of Way Contract, for a recited consideration of Ten Dollars ($10.00) cash and $1.00 per lineal rod to be paid, the Clarks executed and acknowledged that they thereby did "grant and convey unto PACIFIC NORTHWEST PIPELINE CORPORATION, a Delaware corporation, its successors and assigns, hereinafter referred to as Grantee, *the right to select the route* for and construct, maintain, inspect, operate, protect, repair, replace, alter or remove a pipeline or pipelines for the transportation of oil, gas and the products thereof, on, over and through" their said parcel above described.

The pipeline was installed, but whether it, like Topsy, just grew laterally across the property is not divulged by the record. The right to select the route, however, by the terms of the Contract entailed also the obligation to first survey the route, and inferentially disclose it to the Clarks, who were then to be paid the additional compensation of $1.00 per lineal rod:

"Grantee agrees that after it has completed its survey of the route for its pipeline and has established the route thereof and before pipeline construction is commenced, it will pay Grantors, in proportion to Grantors' respective interests, a total sum equivalent to One ($1.00) Dollar per lineal rod of pipeline so surveyed and established."

In my view the Right Of Way Contract went no further than identifying the parcel across which the Clarks would allow an easement to be taken, when and if the easement was identified by selection and survey. To constitute a lineal easement, it ordinarily would have necessitated a center line and so many feet on either side thereof. To constitute a permanent easement re-

quired a survey, and the survey would necessarily have to have been recorded, with reference to the Right of Way Contract, by book and page number, or otherwise have been entirely sufficient of itself. Only in such a manner would the subsequent purchasers of the property be bound. Nothing in this record shows that these proper steps were taken.

Obviously, the pipe in the ground for over three decades will likely remain there on the principle of prescriptive easements, flowing out of a permissive, unopposed and compensated entry.

SHEPARD, Justice, dissenting:

I would hold as a matter of law, that the instrument in question here is so deficient as to convey no interest in the property. It is a fundamental precept of real property conveyancing that the interest sought to be conveyed must be described with some amount of certainty to be drawn from within the four corners of the conveyancing instrument, or by reference to some exterior material. *White v. Rehn*, Idaho, 644 P.2d 323 (1982); *Matheson v. Harris*, 96 Idaho 759, 536 P.2d 754 (1975); *Luke v. Conrad*, 96 Idaho 221, 526 P.2d 181 (1974); *Allen v. Kitchen*, 16 Idaho 133, 100 P. 1052 (1909). Here there is absolutely no description of any kind or type except as to the grantors' entire property. Clearly the instrument does not contemplate a transfer of the entire property. In the usual conveyance of a right-of-way easement, at least the termini and the direction of the easement are described. *See Quinn v. Stone*, 75 Idaho 243, 270 P.2d 825 (1954). Here there is no method of determining from the instrument or any exterior reference, where the right-of-way will be placed.

As to the original pipeline, it is in place and appellants make no complaint regarding that original line. In any event, estoppel and part performance would undoubtedly bar any such claim if made. As to the second pipeline in question here or any subsequent pipelines, it is implied by the majority that such will parallel the first; however, there is nothing in the document or any external reference to require such. Here there is absolutely no restriction on the width of the easements purportedly granted. In the ordinary situation, if the location of an easement could be generally ascertained, a grantee might be restricted to a reasonable width. However, in the instant case, with no restriction on the number of pipelines which might be placed upon the property and with no width restriction contained therein, the entire property of the purported grantors could be swallowed up—a result obviously not contemplated by the minimal amount of compensation at issue here.

Further, since the instrument contains absolutely no time limitations within which the grantee is required to exercise its "right" to place additional unlimited pipelines across the property, under the majority's literal interpretation and language, the property is perpetually burdened, not with a clearly existing easement use, but also with the "right" amounting to an option to place additional pipelines at any place on the property at any time in the future with absolutely no limitations thereon. This "right" is not personal to the grantee, but may be assigned or conveyed to any other person. Such a result could preclude any effective utilization by the grantor of its property, since, by the document terms, it cannot "build, create or construct any obstruction" which might interfere with Northwest's right to lay future lines. Such a result is hardly consistent with the philosophy against restraints on alienation. Neither can such a result be deemed to have been in the contemplation of the grantors in view of the minimal consideration.

In the event that the document has any efficacy whatsoever, I would agree with the view of Bistline, J., that at best it amounted to some type of option.