Stener CARLSON, III, d/b/a Country Host Motel, Plaintiff–Appellant,

v.

BOLD PETROLEUM, INC., a Colorado corporation; Ochs Brothers, a Colorado general partnership; Jim Benine, d/b/a Best Western Rambler Motel; and Jimote, Inc., a Colorado corporation, Defendants–Appellees.

No. 98CA1716.

Colorado Court of Appeals, Div. V.

Jan. 20, 2000.

Law Offices of John G. Nelson, John G. Nelson, Denver, Colorado, for Plaintiff–Appellant.

Howard J. Kunstle, P.C., Howard J. Kunstle, Colorado Springs, Colorado, for Defendants–Appellees Bold Petroleum, Inc. and Ochs Brothers.

Gary E. Hanisch, Walsenburg, Colorado, for Defendants–Appellees Jim Benine, d/b/a

Best Western Rambler Motel and Jimote, Inc.

Opinion by Judge KAPELKE.

In this declaratory judgment action, plaintiff, Stener Carlson, III, d/b/a Country Host Motel, appeals from the judgment entered by the trial court determining that defendants Bold Petroleum, Inc., Ochs Brothers, Jim Benine, d/b/a Best Western Rambler Motel, and Jimote, Inc., are owners of an easement on plaintiff's property (the property). We affirm.

Plaintiff is the successor in interest of Michael P. Melnick and Glenita L. Melnick, d/b/a Country Host Motel, who entered into an agreement dated March 15, 1977 (the agreement), by which they granted an easement and license to defendants' predecessors in interest. The agreement created an easement and license to lay a pipeline through the property for the transporting of sewage, and to use certain lagoons on the property to collect and store sewage water.

By the terms of the agreement, defendants' predecessors were obligated to pay plaintiff's predecessors $200 per month and also to pay 50% of the cost of certain improvements, enlargements, or additions to the lagoons. In addition, the agreement provided that the grantees "shall use said lagoons for a period of 3 years" from the date of the agreement, and also provided that the agreement "shall be renewable in 3–year periods" at the option of the grantees "at a rental agreed upon" by the grantors and grantees "to reasonably reflect any new conditions." Finally, the agreement stated that it "shall extend to and be binding upon the heirs, personal representatives, successors and assignees of the parties hereto."

Throughout the period between the date of the agreement and plaintiff's purchase of the property, in May 1988, the defendants or their predecessors continued to use the lagoons and make payments to the owners of the property.

After the purchase, plaintiff continued to receive payments, although he later denied having been aware of the agreement itself. In January 1990, plaintiff increased the fees charged to defendant Ochs Brothers from $25 to $50 per month, and in August 1992, he increased the fees charged to defendant Jimote's predecessor from $175 to $500 per month. In January 1993, plaintiff raised the fee charged to Ochs Brothers to $150 per month. In addition, plaintiff apportioned certain costs among defendants.

In August 1996, plaintiff demanded payments of $2500 per month from the defendants, who refused to accede to the demand. The dispute culminated in the filing of this action.

Following a bench trial, the trial court entered a declaratory judgment determining that the agreement had been renewed for a series of three-year terms upon the payments of the fees and costs by the defendants and their predecessors and by the acceptance of such payments by plaintiff and his predecessors. The court rejected plaintiff's contention that the agreement had terminated and the arrangement was merely on a month-to-month basis.

## I.

Plaintiff first contends that the trial court erred in determining that the alleged renewals of the agreement were not void under the statute of frauds. We disagree.

■ It is generally recognized that easements must be created in writing and that an oral contract to create an easement is within the statute of frauds and therefore not valid. See 7 Thompson on Real Property § 60.03(a)(5) (Thomas ed.1994).

Here, it is evident that the 1977 agreement itself was in writing and did contain sufficient terms describing the property, the nature of the rights acquired, and the consideration to be paid.

■ Nevertheless, plaintiff argues that the essential terms of the renewals themselves had to be in writing in order to satisfy the requirements of the statute of frauds. Section 38–10–112, C.R.S.1999. Specifically, plaintiff contends that the original agreement fails to set forth the consideration to be paid under the renewed agreement.

In rejecting plaintiff's contention, the trial court noted that the agreement itself did not require that any renewals be in writing. In addition, the court noted that the parties had exchanged letters concerning the increased fees and apportionment of expenses up until August 1995, when plaintiff demanded the $2500 per month amount.

■ Under the original agreement, the grantees of the easement were given the right to renew at a rental agreed upon by the grantors and the grantees "to reasonably reflect any new conditions." We agree with the trial court's conclusion that plaintiff's continuing acceptance of the payments made by defendants for fees and for costs for improvement of the lagoon effected a renewal even without any formal renewal agreement as such. *Cf. Thomas & Son Transfer Line, Inc. v. Kenyon,* 40 Colo.App. 150, 574 P.2d 107 (1977), *aff'd sub nom. Cohen v. Thomas & Son Transfer Line, Inc.,* 196 Colo. 386, 586 P.2d 39 (1978) (where lease contained no provision requiring tenant to give notice of election to extend lease, tenant's continuing in possession and payment of rental sufficiently indicated tenant's desire to extend lease for the additional term).

■ As noted, plaintiff urges that the renewal is not effective because the agreement lacks an essential term—namely, the consideration to be paid. However, the agreement states that it is renewable in 3-year periods "at a rental agreed upon by grantors and grantee to reasonably reflect any new conditions."

Under a provision such as this, in the event the parties are unable to agree, a court can determine what amount is reasonable, and the renewal remains valid and enforceable. *See Bechmann v. Taylor,* 80 Colo. 68, 249 P. 262 (1926).

In *Bechmann,* a lease contained the following renewal provision: "And at the end of five years, [the tenant] may have the option of the building at what the rent will be worth at that time." 249 P. at 262. The court concluded that this constituted a valid renewal provision notwithstanding the indefiniteness of the provision as to the rental rate. The court stated:

The objection to its validity is that it is uncertain as to the term and the rent on renewal; but in such cases, it is universally held that the term is the same as the original; and as to the rent, the clause is clear and plain that the rent was to be the fair market rate—i.e., the reasonable rate at the date of renewal.

249 P. at 262–63.

We thus agree with the trial court that no separate or additional written agreement on renewal was required under the circumstances.

## II.

Plaintiff also urges that the court erred in concluding that the agreement allowed for the agreement to be renewed "in perpetuity."

First, our examination of the agreement reveals that there is no limit to the number of three-year terms for which the defendants or their predecessors or successors in interest could renew. Plaintiff, however, has the right to terminate the agreement if the agreed payments are not made within 15 days of their due dates. The intent of the parties to allow for an indefinite number of three-year renewal terms is evident from the agreement, which, as noted, extends to and is binding upon the heirs and assignees of the original parties.

■ We are aware of no prohibition against parties providing for such multiple renewals of easement rights. Indeed, there is nothing either improper or unusual about an easement's being of a perpetual duration. We find the cases cited by plaintiff regarding perpetual leases to be simply inapplicable to this case, which involves the grant of an *easement* rather than a lease agreement.

■ Although plaintiff does not appear to be arguing that the agreement violates the rule against perpetuities, as such, we note that that doctrine simply invalidates any interest which *vests* too remotely; "it does not invalidate every perpetual interest." *Cloud v. Association of Owners, Satellite Apartment Bldg., Inc.,* 857 P.2d 435, 438 (Colo. App.1992).

■ The easement rights granted here vested at the time of execution of the original agreement in 1977. Thus, the rule against perpetuities is not implicated. *See Northwest Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 103 Idaho 180, 646 P.2d 422 (1982) (holding that grant of right to lay pipeline did not violate rule against perpetuities where instrument granting the easement created present rights and subjected the land to an immediate servitude).

Finally, the trial court did not find that the agreement itself remains perpetually in effect. Rather, the court found only that the agreement had been effectively renewed for three-year terms and remained in effect at the time of the court's ruling.

Accordingly, the trial court did not err in holding that the agreement remains in effect and that defendants continue to be owners of an easement upon plaintiff's property for the purposes described in the agreement.

The judgment is affirmed.

Judge DAVIDSON and Judge TAUBMAN concur.