# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49773-2022

| | | |
|---|---|---|
| MILES H. MILLARD and LEANNE M. MILLARD, husband and wife, | ) ) ) | |
| Plaintiffs-Respondents, | ) ) | Boise, November 2023 Term |
| v. | ) ) | Opinion filed: February 27, 2024 |
| ROBERT D. TALBURT and DEBRA A. TALBURT, husband and wife, | ) ) ) | Melanie Gagnepain, Clerk |
| Defendants-Appellants. | ) ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Boise County. Samuel A. Hoagland, District Judge.

The decision of the district court is <u>affirmed</u>.

Partridge Law, PLLC, Boise, for Appellants. William L. Partridge argued.

Johnson May Law, Boise, for Respondents. J. Justin May argued.

---

ZAHN, Justice.

This appeal arises from a property dispute between Robert and Debra Talburt and their neighbors, Miles and Leanne Millard. The Millards filed a lawsuit seeking to quiet title to a disputed tract of land, seeking declaratory judgments concerning a roadway easement and a well easement, and seeking breach of contract damages for maintenance of a shared well. After the Millards filed their lawsuit, the Talburts constructed a fence within the roadway easement, sent a letter to the Millards stating that they were relocating the roadway easement, and locked the pump house for the shared well.

After a two-day bench trial, the district court concluded that the Millards had abandoned their breach of contract claim and had failed to establish a right to the disputed property. The district court, however, ruled in favor of the Millards on the remaining claims. The district court also ordered the Talburts to remove the fence and found the Talburts' attempt to relocate the

roadway easement to be unlawful, invalid, and void. Later, the district court awarded the Millards a portion of their attorney fees and costs pursuant to Idaho Code section 12-121.

The Talburts timely appealed. For the reasons discussed below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Respondents Miles and Leanne Millard purchased 5.34 acres of real property in Boise County in 1994. The next year, the Millards had a well dug on the property. In May 1996, the Millards subdivided the property into two lots via a Segregation Plat, sold one of the resulting lots ("Lot 1") to the Legaults, and retained the second lot ("Lot 2"). The Segregation Plat depicts two easements that burden Lot 1 and are the subject of this litigation: (1) a roadway easement described as "C/L 20' Right-of-Way for Ingress and Egress" ("the Roadway Easement") and (2) a well easement described as "an easement in favor of Lot 2 for access and usage of existing well" ("the Well Easement").

In 1996, the Millards and Legaults built a retaining wall between the two properties. Unbeknownst to either party, the actual property line was not where they built the retaining wall, but instead was slightly closer to the Millards' house. Therefore, a small sliver of the Legaults' property was on the Millards' side of the retaining wall. The parties refer to this sliver as the "Upper Wedge." Since 1996, the Millards have treated the Upper Wedge as a continuous part of their driveway and graveled the area and parked vehicles on the Upper Wedge.

In 2001, the Millards executed a "Shared Well Agreement" with the Legaults that equally apportioned costs and responsibilities associated with the shared well. The shared well includes a shared pump house and equipment, and well water is separately piped to both homes.

Following their execution of the Shared Well Agreement, the Legaults sold Lot 1. Lot 1 was later sold again in 2011, this time to Appellants Debra and Robert Talburt. Prior to the Talburts' purchase, Lot 1 was surveyed and it was discovered that the Upper Wedge was not part of the Millards' property but instead was part of Lot 1. The Millards and the Talburts' predecessor-in-interest executed and recorded a "Lot Line Adjustment" that identified the Upper Wedge as part of Lot 1. The Millards signed the Lot Line Adjustment and certified that the property line adjustment depicted therein was acceptable. The Millards, however, continued to use the Upper Wedge as part of their driveway.

The Roadway Easement is a twenty-foot graveled roadway through Lot 1 that splits into two driveways; one goes to the Talburts' home on Lot 1 and the other goes to the Millards' home

on Lot 2. Since 1996, the Millards have used the Roadway Easement to access the driveway to their home as well as an area of their property they call the "Lower Meadow." The "Lower Meadow" consists of the lower portion of the land purchased from the Legaults in 1998 and extends to the right side of Lot 2. Between 1996 and 2020, the Millards used a roadway that cuts through the Lower Meadow, which the parties call the "Access Road," to drive from the Roadway Easement to the Lower Meadow. The aerial photo below was admitted as an exhibit before the district court and has been modified by this Court to illustrate the different landmarks and easements at issue in this case. The photo is for illustrative purposes only and does not precisely reflect the exact location of the critical landmarks for the case.



All seemed fine between the Millards and Talburts until 2017, when a series of disputes erupted between them. The Talburts claimed that the Millards trimmed elderberry bushes on the Talburts' property without permission, cleaned up pine needles on the Roadway Easement when they preferred the "natural look" of the pine needles, took excessive trips to the well, added bleach in the well water, and failed to replace a broken fence at the end of the Roadway Easement. In

response, the Talburts prevented the Millards' guests from using the Roadway Easement to access the Millards' house or the Lower Meadow, plowed snow in a way that blocked the Millards' snowplow, and placed a small trailer on the Upper Wedge to prevent the Millards from using it. As a result of the disputes, the Millards commenced this lawsuit.

The Millards pleaded three claims against the Talburts: (1) a quiet title claim concerning the Upper Wedge based on a boundary by agreement, or in the alternative, claiming a prescriptive easement to use the Upper Wedge; (2) a declaratory judgment claim regarding the Millards' rights to use and maintain the Roadway Easement and Well Easement and restricting the Talburts from building a fence in the Roadway Easement; and (3) a breach of contract claim for failure to pay expenses under the Shared Well Agreement. The Millards moved for summary judgment. The district court granted a partial summary judgment and concluded that the Segregation Plat created the Roadway Easement across the Talburts' property for the benefit of the Millards. The district court denied summary judgment on all other issues after concluding that there were genuine issues of material fact that needed to be resolved at trial.

During the litigation, the Talburts put a lock on the shared pump house, and sent a letter through their attorney stating they were relocating the Roadway Easement pursuant to Idaho Code section 55-313. The Talburts then built a fence within the original boundaries of the Roadway Easement that blocked the Millards' access to the Access Road and the Lower Meadow. The Talburts took these actions despite the fact that the Millards had a pending claim for declaratory judgment, which sought a declaration that the Talburts "may not build a fence or other obstruction along the boundary of the easement and the Millard property" and also sought a declaration concerning their right to access the pump house. Because the district court had not yet ruled on these claims when the Talburts built the fence and locked the pump house, the Millards devoted additional time and expense to arguing that these activities were unlawful.

On the eve of trial, the Talburts filed a motion for reconsideration arguing that the Roadway Easement and Well Easement were invalid because they failed to comply with Idaho Code section 55-601, which requires conveyances to include a grantee's name and mailing address. The district court denied the motion, holding that subdividing a property via a Segregation Plat does not constitute a conveyance.

The district court then held a two-day bench trial, after which it made the following findings and conclusions:

4

(1)     The boundary line between Lots 1 and 2 is as reflected in the 2011 Lot Line Adjustment and the Upper Wedge belongs to the Talburts.

(2)     The plain language of the Segregation Plat gives the Millards the right to access, use, monitor, and maintain the shared well. The district court ordered the Talburts to cease any efforts to block access to, or lock, the shared well.

(3)     Both the Millards and the Talburts have a right to access the well at any time to monitor, maintain, repair, or replace any aspect of the well. The Well Easement includes the right to access the pump house and the path to the well. Both the Millards and the Talburts have equal rights and responsibilities regarding the shared well, including an obligation to equally share the costs and responsibilities for maintaining the shared well.

(4)     The Millards have a valid Roadway Easement, and they have the right to access their property from any point on the Roadway Easement.

(5)     The Talburts do not have the unilateral right under Idaho Code section 55-313 to relocate the Roadway Easement to the injury of the Millards and such attempt was unlawful, invalid, and void.

(6)     The fence built by the Talburts in the Roadway Easement is a spite fence that must be removed.

(7)     The Millards have the duty to reasonably maintain the Roadway Easement.

(8)     The Millards abandoned their breach of contract claim for well maintenance costs.

The Talburts moved to amend the district court's order, arguing that the district court incorrectly imposed an additional burden on the servient estate by imposing shared costs and responsibilities for maintenance of the shared well. The district court denied the Talburts' motion to amend, holding that the scope of the Well Easement included the requirement that the parties equally share the costs and responsibilities for maintenance of the well.

After the district court issued its findings of fact and conclusions of law, the Millards moved for attorney fees and costs pursuant to Idaho Code section 12-121. The district court found that the Talburts' actions necessitated the lawsuit, their defense was frivolous, and they wrongly engaged in self-help measures after the litigation had commenced, and therefore determined the Millards were entitled to an award of attorney fees. The district court considered the amount of attorney fees requested and determined that 75% of the requested fees pertained to claims on which

5

the Millards prevailed. The district court therefore awarded the Millards 75% of the requested attorney fees under Idaho Code section 12-121.

The Talburts timely appealed.

## II.    ISSUES ON APPEAL

1. Whether the district court erred in concluding that the Segregation Plat was not a conveyance for purposes of Idaho Code section 55-601.

2. Whether the district court erred in its declaratory judgments concerning the Roadway Easement and the Well Easement.

3. Whether the district court erred in awarding attorney fees to the Millards pursuant to Idaho Code section 12-121.

4. Whether the Millards are entitled to attorney fees on appeal pursuant to Idaho Code section 12-121.

## III.    STANDARDS OF REVIEW

This appeal first requires us to review the district court's partial grant of summary judgment and its subsequent denial of the Talburts' motion to reconsider its decision.

> When reviewing a summary judgment ruling or a ruling on a motion to reconsider a summary judgment order, this Court applies the same standard utilized by the district court in deciding the motion. With respect to that standard, this Court exercises free review to determine if summary judgment is proper. Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, this Court construes disputed facts in favor of the nonmoving party and draws all reasonable inferences in the nonmoving party's favor.

*Christiansen v. Potlatch #1 Fin. Credit Union*, 169 Idaho 533, 540, 498 P.3d 713, 720 (2021) (internal citations omitted).

Next, we review the Talburts' challenge to the district court's findings of fact and conclusions of law following the bench trial.

> [T]his Court's review of the district court's decision is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. Factual findings will not be set aside unless they are clearly erroneous. A factual finding is clearly erroneous if it is not supported by substantial and competent evidence. Although there may be conflicting evidence, [s]ubstantial and competent evidence exists [i]f there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal.

> This Court is not bound by the legal conclusions of the trial court and exercises free review to draw its own conclusions from the facts presented. However, this Court liberally construes a trial court's factual findings in favor of the judgment entered.

*Hood v. Poorman*, 171 Idaho 176, 186–87, 519 P.3d 769, 779–80 (2022) (all but first alteration in original) (internal citations and quotation marks omitted).

## IV.    ANALYSIS

The Talburts appeal several decisions of the district court. We will address each in turn.

### A. The Segregation Plat does not convey an estate in real property for purposes of Idaho Code section 55-601.

The Talburts first argue that the district court erred when it granted partial summary judgment after concluding that the Segregation Plat created a valid roadway easement in favor of the Millards across Lot 1. The Talburts contend that the Roadway Easement was a conveyance under Idaho Code section 55-601 and that the Segregation Plat could not create a valid easement because it lacked the name and address of the grantee. Idaho Code section 55-601 contains requirements for a valid conveyance of an estate in real property:

> A *conveyance* of *an estate in real property* may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing. The *name of the grantee and his complete mailing address* must appear on such instrument.

I.C. § 55-601 (emphasis added). The Talburts argue that easements are interests in real property and should therefore be considered "conveyances" for purposes of Idaho Code section 55-601. In support of their argument, the Talburts point to Idaho Code section 55-813, which defines a "conveyance" to include "every instrument in writing by which any estate or interest in real property is created . . . ." I.C. § 55-813.

We are not persuaded by the Talburts' argument. Easements do not convey an estate in real property for purposes of section 55-601. We have held that an easement is not an "estate" in real property, but rather an "interest" in real property. *Kirk v. Wescott*, 160 Idaho 893, 900–01, 382 P.3d 342, 349–50 (2016). To the extent that the Talburts argue that the definition of conveyance contained in section 55-813 establishes that an easement is an estate in real property, the express language of section 55-813 limits its application to that chapter and title. *See* I.C. § 55-813 ("The term 'conveyance' *as used in this chapter* . . . ." (emphasis added)). Thus, the definition of conveyance in section 55-813 is not applicable to section 55-601.

The Talburts cite *Adams v. Anderson*, 142 Idaho 208, 127 P.3d 111 (2005), for the proposition that this Court has relied on sections 55-813 and 55-601 together to define a conveyance. In *Adams*, the plaintiffs sought a declaratory judgment that they owned a disputed piece of property pursuant to a recorded survey. *Id*. at 209, 127 P.3d at 112. The facts of *Adam*s, however, are distinguishable from the facts of this case. First, the record of survey in *Adams* constituted a conveyance because, unlike the situation here, fee title to the property was actually transferred between parties. *See id.* Next, the issue in *Adams* was whether the Record of Survey was properly recorded and provided constructive notice of the conveyance to defendants under section 55-811. *Id.* at 209, 211, 127 P.3d at 112, 114. Proper recording and constructive notice are not issues in this case. For these reasons, *Adams* is distinguishable and not applicable to the Segregation Plat in this case.

We hold that the Segregation Plat's creation of the Roadway Easement was not a conveyance of an estate in real property and therefore was not subject to the requirements of section 55-601. We affirm the district court's decision granting partial summary judgment on the Millards' claim of a valid easement for ingress and egress across Lot 1.

**B. The district court did not err in its declaratory judgments concerning the Roadway Easement and the Well Easement.**

The Talburts challenge the district court's conclusions that (1) the scope of the Roadway Easement did not limit the Millards' use of the roadway to ingress and egress to their driveway; (2) the Talburts had no right to relocate the Roadway Easement under Idaho Code section 55-313; (3) the Millards are entitled to equal access and use of the shared well; and (4) the Talburts are required to equally share in the expenses and maintenance of the shared well. We address each argument in turn.

*1. The scope of the Roadway Easement includes the right of ingress and egress to the entirety of the Millards' property.*

The district court held that the scope of the Roadway Easement includes ingress and egress to all of the Millards' property abutting the road, including the right to access the Lower Meadow and Access Road. The Talburts argue that the language of the Roadway Easement only allows the Millards to use the road to access their driveway at the end of the easement.

"An instrument granting an easement is to be construed in connection with the intention of the parties and circumstances in existence at the time the easement was given and carried out." *Argosy Tr. ex rel. Andrews v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005) (quoting

*Quinn v. Stone*, 75 Idaho 243, 250, 270 P.2d 825, 830 (1954)). "That intent is a question of fact, and the trial court's findings on the issue will not be disturbed on appeal if supported by substantial and competent evidence." *Id*. (citation omitted). "Substantial and competent evidence exists [i]f there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal . . . ." *Easterling v. HAL Pac. Props., L.P.*, 171 Idaho 500, 509, 522 P.3d 1258, 1267 (2023) (alterations in original) (quoting *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019)).

The district court's findings concerning the scope of the easement were supported by substantial and competent evidence. The Roadway Easement is visually depicted in the Subdivision Plat and accompanied by the language "C/L 20' Right-of-Way for Ingress and Egress." The easement language does not contain any limitations and thus is a general grant of easement. *McFadden v. Sein*, 139 Idaho 921, 924, 88 P.3d 740, 743 (2004). General grants of easement include "those uses which are incidental or necessary to the reasonable and proper enjoyment of the easement" and are "limited to those that burden the servient estate as little as possible." *Id.* (quoting *Abbott v. Nampa Sch. Dist. No. 131*, 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991)). The use may increase in volume and kind during the course of the easement as consistent with the normal development of their lands. *Id.*

The district court determined the scope of the Roadway Easement by examining the Millards' historical use of the Roadway Easement. *See Lorenzen v. Pearson*, 167 Idaho 385, 393–95, 470 P.3d 1194, 1202–04 (2020). The Millards presented evidence that they have historically used the Roadway Easement to access the Lower Meadow and Access Road since the creation of the Roadway Easement in 1996. The Millards did not own the entire Lower Meadow when the Roadway Easement was created, but they historically accessed and used the entire Lower Meadow with permission from the Legaults until they purchased a tract of land abutting the Roadway Easement from the Legaults in 1998. The Millards continued to use and access the Lower Meadow via the Roadway Easement until the Talburts built a fence blocking access in 2020. This constituted substantial and competent evidence supporting the district court's findings as to the scope of the Roadway Easement.

The evidence presented at trial established that the Millards' use of the easement to access their property that abutted the roadway was incidental or necessary to their proper enjoyment of the easement. When the Millards purchased additional land in the Lower Meadow, their use of the

9

Roadway Easement remained consistent with the development of their lands. We therefore affirm the district court's decision that the scope of the Roadway Easement permits the Millards ingress and egress to their property at any point along the Roadway Easement.

2. *The district court did not err in concluding that Idaho Code section 55-313 prevented the Talburts from unilaterally relocating the Roadway Easement.*

After litigation commenced, the Talburts sent a letter through their attorney stating they were relocating the Roadway Easement pursuant to Idaho Code section 55-313 so they could build a fence between the Roadway Easement and the Lower Meadow. The Talburts then proceeded to build the fence within the boundaries of the Roadway Easement and blocked the Millards' access to the Lower Meadow and the Access Road without modifying the existing road to provide a road of equal width that enabled the Millards to access the Lower Meadow and the Access Road.

Idaho Code section 55-313 describes when a servient estate may relocate an access easement:

> Where, for motor vehicle travel, any access which is less than a public dedication, has heretofore been or may hereafter be, constructed across private lands, the person or persons owning or controlling the private lands shall have the right at their own expense to change such access to any other part of the private lands, *but such change must be made in such a manner as not to obstruct motor vehicle travel, or to otherwise injure any person or persons using or interested in such access.*

I.C. § 55-313 (emphasis added). The district court concluded that section 55-313 prohibited the Talburts from unilaterally relocating the Roadway Easement to the injury of the Millards. The district court concluded that the relocation injured the Millards by removing their historic access to the Lower Meadow and Access Road. The Talburts argue that moving the Roadway Easement would not injure the Millards because the scope of the Roadway Easement does not permit access to the Lower Meadow and the Access Road.

The Talburts' argument on this point fails for the same reason their argument concerning the scope of the Roadway Easement fails. As previously discussed, the scope of the Roadway Easement includes the right of ingress and egress to the Lower Meadow and Access Road. The Talburts' proposed relocation would prevent the Millards from accessing those areas. This interference is exactly the type of injury that section 55-313 prohibits. *See Manning v. Campbell*, 152 Idaho 232, 234–35, 268 P.3d 1184, 1186–87 (2012); *see also Belstler v. Sheler*, 151 Idaho 819, 826, 264 P.3d 926, 933 (2011). We therefore affirm the district court's decision concluding

that the Talburts' attempted relocation was unlawful, invalid, and void and preventing the Talburts from unilaterally relocating the Roadway Easement.

3. *The Talburts must remove the spite fence because it interferes with the Millards' full enjoyment of their easement rights.*

After providing written notice that they were relocating the Roadway Easement, the Talburts built a fence inside the boundaries of the original Roadway Easement, which blocked the Millards' access to the Lower Meadow and the Access Road. The district court concluded the fence was a "spite fence" and ordered that it be removed. A "spite fence" is an otherwise useless structure constructed by a property owner for the sole purpose of injuring his neighbor. *See Sundowner, Inc. v. King*, 95 Idaho 367, 369, 509 P.2d 785, 787 (1973). The Talburts' only argument challenging the district court's conclusion that they built a spite fence is that the Roadway Easement does not include the right to access the Lower Meadow, so the fence did not injure the Millards. As discussed above, the scope of the Roadway Easement included the right of ingress and egress to the Lower Meadow and Access Road. The Talburts' construction of a fence in the boundaries of the easement injured the Millards because it interfered with their historical use of the easement, including their access to the Lower Meadow and Access Road. Therefore, we affirm the district court's order requiring the Talburts to remove the fence.

4. *The scope of the Well Easement grants the Millards the right to access, use, monitor, and maintain the shared well.*

The district court held that the Millards have the right to access, use, monitor, and maintain the shared well. The Talburts argue that the Well Easement was not a proper mechanism for creating a shared well. The Talburts further argue that the Well Easement deprives the Talburts of their ability to relocate or change the pump house and well equipment, and thus violates this Court's holding in *Johnson v. Highway 101 Investments, LLC*, that an "easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." 156 Idaho 1, 3, 319 P.3d 485, 487 (2014) (quoting *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 420, 283 P.3d 728, 737 (2012)). Finally, the Talburts argue that the pump house and well equipment should not be burdened by the Well Easement because "the erection of a permanent structure within an easement of definite location and dimension is per se unreasonable." *Id.* at 5, 319 P.3d at 489.

Resolving these arguments requires us to first determine whether the district court erred in determining that the scope of the Well Easement included the right for both lots to access, use,

11

monitor, and maintain the well. The Segregation Plat visually depicts a well, which is accompanied by the language "[a]n easement in favor of Lot 2 for *access and usage* of existing well." (Emphasis added.) When interpreting this general easement language, we look to the intention of the parties at the time the easement was created to determine the scope of the easement. *Argosy Tr.*, 141 Idaho at 572, 114 P.3d at 130. The plain language of the Well Easement demonstrates an intent for both parties to access and use the well. Included in the access and use of the well is a secondary easement granting the right to repair and maintain the well. *See Caldwell v. Cometto*, 151 Idaho 34, 38–39, 253 P.3d 708, 712–13 (2011) ("Idaho recognizes the existence of secondary easements, which convey the right to repair and maintain the primary easement so long as such activity is reasonable.").

The Talburts' argument that our decision in *Johnson* mandates a different result is misplaced. In *Johnson*, the servient estate erected a sign within an existing roadway easement, reducing the size of the easement and interfering with the dominant estate's use of the easement. *Johnson*, 156 Idaho at 2, 319 P.3d at 486. Here, the shared well had been drilled and was in existence before the Talburts purchased Lot 1. Before the Talburts purchased the property, the Millards created an express easement, via the Segregation Plat, to preserve their access to a well they had already drilled themselves. The Millards did not erect an additional permanent structure after the Talburts purchased their property that interfered with the Talburts' use of an existing easement. Further, the Millards' access and usage of the shared well is not inconsistent with the general use of the Talburts' property. If anything, the Millards' access and use of the well benefits the Talburts because it allows them to share in the costs and responsibilities of maintaining the well equipment owned by the Talburts. *Johnson* is distinguishable from the facts of this case. Therefore, we affirm the district court's conclusion that the scope of the Well Easement grants the Millards the ability to access, use, monitor, and maintain the shared well.

5. *The Millards and Talburts are equally responsible for maintenance of the shared well.*

The district court concluded that the Millards and Talburts must share equally in the responsibilities and costs of maintaining the well. The district court found that this was the intent of the original parties to the Well Easement.

First, the Talburts argue the district court impermissibly acted sua sponte to amend the Millards' pleadings to include a prayer for relief that the Talburts be ordered to contribute to maintaining the well. This argument is belied by the pleadings. A review of the Millards' complaint

reveals that they sought a "declaratory judgment establishing the right of the Roadway and Well easements over the Talburt Property for the use and enjoyment of Millard[s] . . . and to include Millards' right to maintain the Roadway and Well easements respectively." The sharing of responsibilities and costs of maintenance of the Well Easement was pleaded as part of the Millards' declaratory judgment claim.

The Talburts next argue that, as the servient estate, they have no duty to maintain the well. The Millards counter that the Well Agreement evidences an intent by the original parties to share equally in the costs and responsibilities of maintaining the well. "An instrument granting an easement is to be construed in connection with the intention of the parties and circumstances in existence at the time the easement was given and carried out." *Argosy Tr.*, 141 Idaho at 572, 114 P.3d at 130 (quoting *Quinn v. Stone*, 75 Idaho 243, 250, 270 P.2d 825, 830 (1954)). "That intent is a question of fact, and the trial court's findings on the issue will not be disturbed on appeal if supported by substantial and competent evidence." *Id*. "Substantial and competent evidence exists [i]f there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal . . . ." *Easterling v. HAL Pac. Props., L.P.*, 171 Idaho 500, 509, 522 P.3d 1258, 1267 (2023) (alterations in original) (quoting *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019)).

The district court relied on substantial and competent evidence in determining that the intent of the parties was to equally share in the costs and responsibilities of the well. Both the language of the Segregation Plat and the Shared Well Agreement between the Millards and the Legaults demonstrated a clear intent to share in the costs and responsibilities of maintaining the shared well.

Finally, the Talburts argue that the district court's order is in error because the servient estate generally has no duty to maintain an easement, even when the servient estate uses the easement. *See Walker v. Boozer*, 140 Idaho 451, 455–56, 95 P.3d 69, 73–74 (2004). While this is generally true, the facts of *Walker* are distinguishable and, as a result, the rule from that case does not apply here.

In *Walker*, as an accommodation to residents of the Quaker Haven Subdivision, the Wiemers, who owned a lot in the Ruud Subdivision, "cut approximately three feet into the sloping bank on their property right before the turnoff . . . thereby allowing people to access Quaker Haven Road from the uphill direction on Ruud Road." *Id.* at 453, 95 P.3d at 71. The Wiemers sold their

property to the Boozers. *Id.* The Boozers initially placed rocks, and later concrete barriers, along Ruud Road near its intersection with Quaker Haven Road, which reduced the usable width of Ruud Road from approximately twenty-two feet to approximately eleven to twelve feet. *Id.* at 453–54, 95 P.3d at 71–72. Residents of the Quaker Haven Estates Subdivision, including the Walkers, sued the Boozers to define and fix the width of the road easement granted by the Wiemers. *Id.* at 454, 95 P.3d at 72. The Boozers counterclaimed, which included a claim for contribution against the Quaker Haven owners for costs associated with maintaining the road easement. *Id.*

After determining that the district court did not err in fixing the width of the roadway easement at twenty-two feet plus two feet of embankment, this Court turned to the Boozers' claim for contribution. *Id.* at 455–56, 95 P.3d at 73–74. We first concluded that, absent a showing by the Boozers that the Quaker Haven owners' maintenance of the easement created an additional burden on their property, the Boozers could not perform work to maintain the easement to their personal standards and then seek reimbursement from the Quaker Haven owners for the expense. *Id.* at 456, 95 P.3d at 74.

Pertinent to this case, this Court rejected the Boozers' argument that the district court erred when it failed to apply a proposition set forth in a legal treatise: "When the dominant tenant and the servient tenant both use an easement, the court may apportion the cost of repair between them accordingly." *Id.* (alteration omitted) (quoting 28A C.J.S. *Easements* § 170 (1996)). Without analysis, this Court rejected the premise advanced by the Boozers: "Although the district court based its denial of the Boozers' counterclaim in part on this proposition, that proposition is not the law in Idaho." *Id.* The Talburts argue that this statement applies equally to the facts of this case and therefore, as the owners of the dominant estate, they cannot be legally required to share in the costs to maintain the shared well.

We affirm the district court's decision requiring the parties to share in the expenses associated with the shared well. The facts in *Walker* are distinguishable from the facts in this case. First, the roadway easement created in *Walker* was created for the sole benefit of the servient estate. That is not the case here. As discussed above, the well easement here was created for the benefit of both lots. Second, it is unclear to what extent the Court's statement in *Walker* resulted from the fact that the Boozers were seeking reimbursement for amounts expended to maintain the road to the Boozers' standards. The Court found it significant that the Boozers did not demonstrate that the easement owners' maintenance of the road created an additional burden or interference

14

with the Boozers' property. *Id.* The Court concluded that, absent such a showing, the Boozers could not dictate the standard by which the easement was maintained and then force the easement owners to pay for it. *Id.*

In this case, the Well Easement was created for the benefit of both lots. As depicted on the Segregation Plat and in the Shared Well Agreement between the Millards and Legaults, the well was intended to benefit both properties following the subdivision of the property. As a result, our holding in *Walker* concerning shared maintenance costs is inapplicable. We hold the district court did not err in concluding that the Millards and the Talburts must equally share in the costs of maintaining the shared well.

**C. The district court did not err in awarding the Millards attorney fees pursuant to Idaho Code section 12-121.**

The Talburts next challenge the district court's order awarding the Millards 75% of their attorney fees pursuant to Idaho Code section 12-121. The Talburts argue (1) this Court's precedent establishes that the district court erred in awarding fees against the Talburts under section 12-121 because the Talburts successfully defended against some of the Millards' claims; (2) the district court erred in finding their legal arguments frivolous and considering out of court conduct in awarding attorney fees; and (3) the district court erred by considering pre-trial settlement negotiations in awarding attorney fees.

Under Idaho Code section 12-121, "the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. "The awarding of attorney fees and costs is within the discretion of the trial court and subject to review for an abuse of discretion." *Smith v. Mitton*, 140 Idaho 893, 897, 104 P.3d 367, 371 (2004).

*1. The district court did not err in concluding that the Millards were entitled to fees under section 12-121, despite the fact that the Talburts prevailed on some issues.*

The Talburts contend the district court erred in awarding the Millards any fees under section 12-121 after concluding that the Talburts successfully defended against the Millards' claim to quiet title to the Upper Wedge and their breach of contract claim. In support of their argument, the Talburts rely on our decision in *Nampa and Meridian Irrigation District v. Washington Federal Savings*, 135 Idaho 518, 524–25, 20 P.3d 702, 708–09 (2001), where this Court held that "if there is a legitimate, triable issue of fact, attorney fees may not be awarded under I.C. § 12-121 even though the losing party has asserted factual or legal claims that are frivolous, unreasonable, or

15

without foundation." The Talburts, however, fail to address our subsequent decision in *Idaho Military Historical Society, Inc. v. Maslen*, 156 Idaho 624, 329 P.3d 1072 (2014), in which we "back[ed] away from" strict adherence to the standard articulated in *Nampa and Meridian* because we were concerned that it could result in "a single, triable issue of fact" excusing a "party from the aggregate of misconduct that necessitates or dominates the conduct of the lawsuit." *Id*. at 632, 329 P.3d at 1080. In *Maslen*, we held that "[a]pportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Id*.

We acknowledge that, following our decision in *Maslen,* we cited the rule from *Nampa and Meridian* in several subsequent cases, including as recently as 2019 and 2020. *See Sec. Inv. Fund LLC v. Crumb*, 165 Idaho 280, 290, 443 P.3d 1036, 1046 (2019); *Galvin v. City of Middleton*, 164 Idaho 642, 648, 434 P.3d 817, 823 (2019); *Lola L. Cazier Rev. Tr. v. Cazier*, 167 Idaho 109, 123, 468 P.3d 239, 253 (2020). Our continued citation to *Nampa and Meridian* leaves some question concerning the continuing viability of the rule announced in *Nampa and Meridian*. We take this opportunity to reaffirm our holding in *Maslen* that "[a]pportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Maslen*, 156 Idaho at 632, 329 P.3d at 1080. We overrule our decision in *Nampa and Meridian*, as well as any subsequent decisions citing it, to the extent they suggest that a request for attorney fees under section 12-121 must be denied if the opposing party has raised one legitimate issue. As a result, this Court's decision in *Maslen* permitted the district court to award the Millards their reasonable attorney fees pursuant to section 12-121, even though the Talburts prevailed on the Millards' quiet title and breach of contract claims.

2. *The district court did not err in determining the Talburts' arguments were frivolous and in considering the entire course of the litigation when determining whether to award attorney fees.*

Next, the Talburts argue that the district court erred in awarding attorney fees because it based the award on their conduct leading up to and during the lawsuit, instead of on the quality of their legal arguments. In awarding attorney fees, the district court found that the litigation was precipitated by the Talburts' interference with the Millards' use and maintenance of the Well Easement and their use of the Roadway Easement. Additionally, the district court found that the litigation was exacerbated by the Talburts' actions of building a spite fence and padlocking the well pump house, which resulted in additional briefing and argument.

16

We find no error in the district court's consideration of the Talburts' conduct when determining whether the Millards were entitled to attorney fees under section 12-121. We have previously held that a district court should take a holistic view of the entire litigation when awarding attorney fees pursuant to section 12-121. *See Turner v. Willis*, 116 Idaho 682, 685, 778 P.2d 804, 807 (1989) (In awarding fees under section 12-121, "[t]he frivolity and unreasonableness of a defense is not to be examined only in the context of trial proceedings. The entire course of the litigation will be taken into account."); *Fitzpatrick v. Kent*, 166 Idaho 365, 373, 458 P.3d 943, 951 (2020) ("Courts take a holistic view to determine whether the standard under Idaho Code section 12-121 has been met."). The language of Idaho Code section 12-121 is not limited to the quality of legal arguments, but includes the manner in which the case was "brought, pursued or defended[.]" I.C. § 12-121. This includes actions that increase litigation costs.

At oral argument, counsel for the Talburts suggested that the Millards were not entitled to fees under section 12-121 because they failed to seek injunctive relief concerning the construction of the fence and locking of the pump house. The Talburts argue that pursuing injunctive relief would have kept litigation costs at a minimum and that the Millards essentially drove up costs by trying the issues. However, section 12-121 does not require that an opposing party seek injunctive relief before asserting that a case was "brought, pursued or defended frivolously, unreasonably or without foundation."

In its decision concluding that the Talburts had frivolously defended the case, the district court cited our decision in *Maslen* for the premise that an award of fees under section 12-121 is permissible when the defendants' actions primarily precipitate the litigation. In *Maslen*, the Court upheld an award of attorney fees when the defendant necessitated a lawsuit by refusing to return property and then defended the lawsuit with claims that the defendant knew were unsupported by fact or law. *Id*., 156 Idaho at 629–30, 329 P.3d at 1077–78. Even though the defendant in *Maslen* succeeded in defending against some claims, this Court upheld a partial award of attorney fees under section 12-121. *Id*. at 632, 329 P.3d at 1080 ("The [d]efendants had no legitimate triable claims of fact on the question that necessitated the initiation of this action. The district court did not abuse its discretion in awarding the attorney fees for the claims of the [d]efendants necessitating this lawsuit that were frivolous, unreasonable, and without adequate foundation.").

The district court correctly concluded that similar factors were present in this case. The Talburts necessitated the litigation due to their increasing hostility regarding the Millards' use of

the Roadway Easement and Well Easement, despite the statements on the Segregation Plat and the parties' historical use of the easements. Following the commencement of the litigation, the Talburts built a spite fence, purported to move the Roadway Easement, and padlocked the well pump house. Each of these actions created additional issues that required additional attorney resources and drove up the costs of the litigation. The Talburts' arguments regarding the scope of the Roadway Easement and Well Easement were in direct conflict with the plain language of the Segregation Plat and this Court's caselaw. The Talburts' relocation of the Roadway Easement and construction of a spite fence prevented the Millards from exercising their historical easement rights and clearly violated Idaho Code section 55-313. Lastly, the district court determined there was credible testimony that Mr. Talburt knew building a spite fence was illegal, but did so anyway. Given this evidence, the district court did not err in concluding that the Talburts frivolously defended the lawsuit for purposes of section 12-121.

Lastly, the Talburts argue that their legal arguments were not frivolous because the district court denied the Millards' motion for summary judgment except on the narrow issue of the existence of the Roadway Easement. However, our case law clearly holds that the district court's denial of a motion for summary judgment does not preclude the award of attorney fees. *See Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982) (reaffirmed in *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 91–92, 803 P.2d 993, 997–98 (1991)).

We are not persuaded by the Talburts' arguments and therefore hold that the district court did not err in determining that the Talburts frivolously defended the case for purposes of Idaho Code section 12-121.

3. *The district court did not err in considering pre-trial settlement negotiations for limited purposes.*

Prior to trial, the Talburts' attorney sent an email to the Millards' attorney urging the Millards to settle and stating that counsel was representing the Talburts on "essentially a pro-bono basis," that trial "costs them nothing," and that the litigation "is costing [the Millards] a lot." The email contained the terms of a settlement offer. The Millards' attorney presented this email to the district court as an attachment to his declaration filed in support of the Millards' request for fees and costs. The Millards argued the email demonstrated that the Talburts knew they had a frivolous legal defense, but litigated anyways because the litigation would not cost them anything.

The Talburts argue that the district court erred in considering this email because it was a confidential settlement negotiation and therefore was inadmissible under Idaho Rule of Evidence

18

408. The Millards contend that the email falls within the "another purpose" exception to Idaho Rule of Evidence 408(b) and was admissible to demonstrate that the Talburts' counsel knew their defense of the Millards' lawsuit was frivolous.

Idaho Rule of Evidence 408(a) prohibits the admission of evidence of "conduct or a statement made during compromise negotiations about the claim" if used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" I.R.E. 408(a)(2). Rule 408(b) permits the admission of such evidence for "another purpose" and "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." I.R.E. 408(b).

We conclude that the settlement offer email was not submitted for an improper purpose under Rule 408(a). Instead, it was submitted for "another purpose" under Rule 408(b): to establish that the Talburts were not litigating because they had meritorious defenses to the lawsuit, but instead because they were trying to drive up the costs of the litigation so the Millards would give up their legitimate claims and dismiss the case. The email was therefore admissible under the rule.

Next, the Talburts argue that the district court erred by considering the settlement email because "district courts may not consider settlement negotiations in the attorney fees determination." *See Jorgensen v. Coppedge*, 148 Idaho 536, 542, 224 P.3d 1125, 1131 (2010). The Talburts' argument confuses the prevailing party analysis with the determination of whether a party has demonstrated an entitlement to an award of attorney fees under section 12-121. While the district court cannot consider settlement negotiations when determining whether to award attorney fees under section 12-121, the district court can, in a limited manner, consider settlement negotiations in determining a prevailing party. *See Zenner v. Holcomb*, 147 Idaho 444, 449, 210 P.3d 552, 557 (2009) ("Although offers of [settlement] may be considered, we have cautioned that they should not be the only, or even most significant, factor in the trial court's prevailing party analysis.").

Here, the district court explained that it only "marginally" considered the potential settlement offer for purposes of its prevailing party analysis. We take this opportunity to caution trial courts and counsel that our holding in *Zenner* should be construed narrowly—offers of settlement are relevant to the prevailing party analysis only for purposes of determining the final relief obtained in relation to the relief sought. Offers of settlement can be helpful in that regard when there is a large discrepancy between the offer of settlement and the final judgment. In this

19

case, we agree with the district court that the settlement offer email was only marginally, if at all, helpful when conducting the prevailing party analysis. In reaching its determination that the Millards were the prevailing parties, the district court also relied on a comparison of the claims brought by the Millards with the results obtained, which was far more dispositive of the prevailing party analysis. Because the district court did not rely solely on the settlement agreement, but only marginally considered it along with other considerations, the district court did not err.

Lastly, the Talburts argue that the district court erred by considering their settlement email in awarding attorney fees because the email may have "colored the court's view of attorney fees." The Talburts' argument on this point fails because the district court expressly stated that it did not consider the email in determining whether to award attorney fees pursuant to section 12-121:

> At the outset, the [c]ourt notes that Partridge's statement that "trial costs his clients nothing" does not weigh into this [c]ourt's determination of whether fees are warranted under [s]ection 12-121.

The district court stated it did not consider the settlement email when determining whether the Millards were entitled to an award of fees under section 12-121. The Talburts provide no evidence to the contrary. Therefore, we find no error in the district court's decision awarding attorney fees to the Millards pursuant to section 12-121.

## D. The Millards are entitled to a partial award of attorney fees and costs on appeal.

The Millards seek attorney fees and costs on appeal pursuant to Idaho Code section 12-121. "When an appellant fails to present a cogent argument as to why he should prevail, an award to his opponent is appropriate." *Turner v. Turner*, 155 Idaho 819, 827, 317 P.3d 716, 724 (2013). "Idaho Code section 12-121 allows attorney fees in a civil action if the appeal merely invites the Court to second-guess the findings of the lower court." *Erickson v. Erickson*, 171 Idaho 352, 371, 521 P.3d 1089, 1108 (2022). "Apportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Maslen*, 156 Idaho at 632, 329 P.3d at 1080.

We conclude that the Millards are entitled to a partial award of attorney fees on appeal pursuant to Idaho Code section 12-121. The Talburts' arguments on appeal ignored the plain language of the Roadway Easement and the Millards' historic use of the easement to access the Lower Meadow and the Access Road. Additionally, the Talburts failed to offer any plausible explanation for how relocating the Roadway Easement would not injure the Millards. Further, the Talburts failed to establish a valid legal basis for erecting the spite fence during the litigation. The

20

Talburts' arguments on each of these issues simply invited us to second-guess the district court's findings and conclusions. *Erickson*, 171 Idaho at 371, 521 P.3d at 1108. We therefore conclude that the Talburts' legal defense of those claims was frivolous. We award the Millards their reasonable attorney fees pursuant to section 12-121 for the following issues: (1) the Roadway Easement; (2) the relocation of the Roadway Easement pursuant to Idaho Code section 55-313; and (3) the district court's order requiring the Talburts to remove the spite fence.

However, we do not award the Millards attorney fees for the Talburts' remaining arguments in this appeal. While ultimately unpersuasive, the Talburts raised legitimate legal arguments on those issues.

## V.    CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed. As discussed above, we award the Millards their reasonable attorney fees on some of the claims presented on appeal, pursuant to Idaho Code section 12-121. As the prevailing parties, the Millards are awarded their costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices BRODY and MOELLER, and Pro Tem Justice WHITNEY CONCUR.